The STATE of Ohio, Appellee,

v.

JOHNSON et al., Appellants.

[Cite as *State v. Johnson* (1999), 134 Ohio App.3d 586.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980531.

Decided June 25, 1999.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, *Jennifer E. Day* and *Thomas Boychan,* Assistant Prosecuting Attorneys, for appellee.

*Michael S. Conese,* for appellants.

GORMAN, Presiding Judge.

Raising two assignments of error, defendants-appellants, Roy R. Johnson and Virginia Meserth, appeal from their convictions, following a joint trial to a jury, for forgery, in violation of R.C. 2913.31, and tampering with records, in violation of R.C. 2913.42. Appellants owned and operated an insurance agency. They also solicited customers who faced driver's license suspensions. For a fee appellants would seek to remedy the suspensions.

Following a 1995 traffic violation, John Jennings was unable to document proof of insurance and faced a license suspension. In June 1997, in exchange for $750, Johnson and Meserth filed a forged "Proof of Insurance Form" with the Bureau

of Motor Vehicles ("BMV") on behalf of Jennings. During the same period, Johnson filed a "2 point reduction form" with a forged driving-course completion date on behalf of Scott A. Newman.

In their first assignment of error, appellants have alleged that the trial court denied them a fair trial by its bias and misconduct at trial. Specifically, they allege that the court, in front of the jury, engaged in a pattern of hostility toward defense counsel on three occasions, thus prejudicing appellants.

"MR. CONESE: If I could consult with my client for a minute. I do have him on subpoena. I may call him later in my case in chief, but I believe I'm done on cross.

"THE COURT: Are you ready to go, Mr. Conese?

"MR. CONESE: I'm just reading the form my client gave me.

"THE COURT: Well, you've been asking the Court to confer with your clients now for the last two days when you're going right through the questioning on cross-examination. I wish you'd move it along.

"MR. CONESE: I'm sorry, Judge. I'm just trying to get their assistance."

The second exchange between the court and appellants' counsel was as follows:

"MR. CONESE: You wouldn't want to do anything fraudulent?

"THE COURT: He said he would not, Mr. Conese. There's been no objection. The Court is going to enter an objection on behalf of the witness. Next question.

"MR. CONESE: So it was out of no personal gain or benefits on the criminal history that you were trying to gain?

"[WITNESS]: No.

"THE COURT: The question has been asked and answered three times, Mr. Conese, by this witness on three different ways that you asked him that question.

"MR. CONESE: Your Honor, I believe that's the last of my questions. If I may have a minute to consult with my clients to make sure.

"THE COURT: Another minute, all right. I'll give you a minute. You've spent almost, in two days, an hour and a half consulting with your clients while you're cross-examining witnesses. Consult with your clients and we'll get on with the case.

"MR. CONESE: I'm trying to do the best I can.

"THE COURT: I hope so. I thought you would consult with your clients before the trial began.

"MR. CONESE: Judge, I did, but sometimes—

"THE COURT: Come on, you're wasting time. Go ahead and consult with your clients again."

The third cited exchange occurred while the prosecution cross-examined Meserth:

"MR. CONESE: Objection. He continues to interrupt her answer.

"THE COURT: You keep on interrupting too. All you have to do is object.

"MR. CONESE: All right, Judge.

"THE COURT: I don't need a long dissertation from you. Just say you object. The objection is sustained."

■ While a trial court has authority to "control all proceedings during a criminal trial," including "limit[ing] the introduction of evidence and the argument of counsel to relevant and material matters," R.C. 2945.03, the court also has an affirmative duty to prevent bias or prejudice against the accused or the denial of a fair trial. See *State v. Farmer* (1951), 90 Ohio App. 49, 46 O.O. 391, 103 N.E.2d 289. In the exercise of this duty, the court must be cognizant of the effect of its comments upon the jurors, as they are " 'highly sensitive to every utterance by the trial judge.' " *State v. Wade* (1978), 53 Ohio St.2d 182, 187–188, 7 O.O.3d 362, 365, 373 N.E.2d 1244, 1248, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157, quoting *Bursten v. United States* (C.A.5,1968), 395 F.2d 976, 983.

■ In *State v. Wade,* 53 Ohio St.2d at 188, 7 O.O.3d at 365, 373 N.E.2d at 1248, the Ohio Supreme Court identified the standard to be applied in determining whether a court's comments reflect bias or impartiality:

"(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel."

■ However, the defendant must object to the comments, in order to give the court an opportunity to correct the error by a curative instruction or otherwise. *Id.* Failure to object waives all but plain error. *Id.*

■ A review of the record fails to reveal that any of the three cited instances or other examples of problematic behavior by the trial court, such as *sua sponte* lodging objections on behalf of the state's witnesses, were objected to by appellants' counsel. Those instances of alleged judicial misconduct, bias, or ill will toward appellants' counsel, not objected to, do not rise to the level of plain

error—that is, the outcome of the trial would not have been different had they not occurred. Crim.R. 52(B); *State v. Jenks* (1991), 61 Ohio St.3d 259, 282, 574 N.E.2d 492, 509.

Rather than addressing any misconduct of the trial court, appellants next contend, in the first assignment of error, that the state failed to comply with their demand for discovery by not disclosing the tape recording of two phone conversations between Johnson and Jennings, in violation of Crim.R. 16(B)(1)(a)(i). The gravamen of their contention is that the trial court erred in overruling their motion for mistrial predicated on the initial disclosure of the taping in the state's case-in-chief.

John Jennings became suspicious of Johnson's request for $750 in cash as payment to clear his license suspension. He ultimately contacted the Ohio Highway Patrol, which provided the cash for his meeting with appellants. Jennings and his mother carried hidden, police-provided audio and video recording devices when they met with Meserth. Jennings testified that they met at a suburban Cincinnati restaurant rather than at the agency's offices, at Johnson's suggestion, because of its convenient location. These recordings were properly disclosed to appellants.

On cross-examination by appellants' counsel, however, Jennings revealed that Sgt. Dungan of the Ohio Highway Patrol had taped two phone conversations made between Jennings and Johnson to arrange the restaurant meeting. Notice of the taped conversations had not been provided in the state's response to appellants' demand for discovery. Later, testifying in his own defense, Johnson said that, during these conversations, he instructed Jennings to bring a card showing proof of 1995 insurance coverage to the meeting. This statement conflicted with the state's theory that appellants forged an insurance card for Jennings.

After Jennings completed his testimony, Sgt. Dungan was called as a state's witness. Dungan indicated that due to equipment failures the first conversation was not taped. The second conversation was taped from a public telephone, and the tape was later found to be inaudible. The recording of that conversation was not available for review. He was not asked if he had overheard the substance of the conversations.

Following the completion of the state's case, the court held a hearing on appellants' motion for a mistrial. Appellants argued that they should have been notified of the taping and should have had the opportunity to determine, for themselves, that the tapes contained no audible exculpatory information. Without asking the state to respond, the trial court concluded:

"Why would they give you something that has nothing on it? I don't understand that. If there's something on that tape, fine, but Sergeant Dungan said that there is nothing, he could hear no voices. He got nothing off the tapes. That's the reason the State never gave it to you, I presume. I don't know."

The state agreed with the court's rationale, and the motion was overruled. The audio tapes were not made part of the record.

In their demand for discovery, appellants sought disclosure of "whether oral statements were made by [appellants]," "disclosure of the contents of those statements," and disclosure of all evidence tending to exculpate the appellants. Upon proper demand, Crim.R. 16(B)(1)(a)(i) requires the prosecution to provide "relevant written or recorded statements made by the defendant or co-defendant, or copies thereof."

The record is uncontradicted that the prosecution did not comply with Crim.R. 16(B)(1)(a)(i) when it failed to disclose the existence of the taped conversation and to provide the recording to appellants. As appellants correctly argued at the mistrial hearing, "a defendant is entitled to discovery of relevant written or recorded statements made by him, and it is not within the province of the state to determine, and then to provide, only that which the state believes to be relevant to the defense." *State v. Moore* (1988), 40 Ohio St.3d 63, 531 N.E.2d 691, syllabus. The fact that the tape was inaudible is irrelevant to the need to disclose the tape and to provide the tape for examination in some meaningful way by appellants.

The state's failure to provide discovery, however, will not amount to reversible error unless there is a showing that the prosecution's failure to disclose was a willful violation of Crim.R. 16, that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by the use of the statement. *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, syllabus.

The state first contends that the prosecutors could not have willfully failed to disclose the tape, because the record does not reflect that they knew of Sgt. Dungan's taping. Nevertheless, " 'the police are a part of the state and its prosecutorial machinery,' " and a police officer's knowledge of a defendant's statement must, for purposes of discovery, be imputed to the state. *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, 110 (quoting *State v. Tomblin* [1981], 3 Ohio App.3d 17, 18, 3 OBR 18, 20, 443 N.E.2d 529, 531); see, also, *State v. Penland* (1998), 132 Ohio App.3d 176, 724 N.E.2d 841.

Appellants' next claim, that foreknowledge of the tape would have benefited the preparation of their defense, however, must fail. Johnson was aware of the telephone arrangements with Jennings. As Jennings was clearly identified, in

pretrial documents, as a witness for the state, appellants had ample opportunity to prepare a rebuttal for any claims that Jennings would make about the substance of the conversation. Appellants did not request a continuance to revise their trial strategy following disclosure of the taped conversations. Moreover, later in the seven-day trial, Johnson himself took the stand, in his own defense, and rebutted the state's claim by testifying, albeit without recorded corroboration, that he had urged Jennings to pursue a lawful course of conduct and had not forged the insurance documentation. Lacking more than a bald assertion that foreknowledge would have benefited their defense, appellants' claim is insufficient to demonstrate that the trial court committed reversible error. *State v. Wiles*, 59 Ohio St.3d at 79, 571 N.E.2d at 111.

Finally, appellants have not shown that they were unfairly prejudiced by the use of the taped conversation in light of Johnson's testimony as to the substance of the conversation and the absence of direct evidence derived from the tape itself to rebut that testimony. If Johnson had chosen not to testify, this court's resolution of this issue would have been far more troubling.

The state's failure to disclose the taped conversations was not, in this case, reversible error. Under the circumstances, we are unable to conclude that the trial court's refusal to impose the severe sanction of mistrial constituted an abuse of discretion. The first assignment of error is overruled.

In their second and final assignment of error, appellants contend that their convictions are against the manifest weight of the evidence. Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546–547. The jury was entitled to reject appellants' defense that the state had presented no direct evidence that Johnson had changed the date of Scott Newman's course completion on the form submitted to the BMV and that there was no direct evidence that Johnson or Meserth had filed the fraudulent insurance card on behalf of Jennings. While appellants highlighted deficiencies in the state's evidence, the weight to be given the ample testimonial and physical evidence and the credibility of the witnesses were primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The second assignment of error is overruled.

Therefore, the judgments of the trial court are affirmed.

*Judgments affirmed.*

**594**

SUNDERMANN, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring separately.

I concur with Judge Gorman's analysis, but am troubled both by the trial judge's apparent lack of understanding of the discovery issue and by the position in which the defense was placed as a result of the discovery violation in this case. Because the trial judge failed to order the evidence produced, we are unable to determine if it would have been helpful to the defense. If the tape were indeed inaudible, there is no problem. But if the tape could be heard, either with or without technological enhancement, we would know whether it would have benefited (or harmed) the defense case. It would have been much better for the trial judge to order production of the tape (and of course much better if the prosecution had produced it in the first place). But, on the state of this record, I concur that reversal is not proper.