DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Circleville Municipal Court judgment of conviction and sentence. A jury found Brenda E. Martin, the defendant below and the appellant herein, guilty of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1).
 {¶ 2} Appellant raises the following assignments of error for review:
First Assignment of Error:
"Did the trial judge commit prejudicial error when he, sua sponte, questioned the ohio state patrol officer, the only witness presented by the state?"
Second Assignment of Error:
"Did the trial court commit prejudicial error when it restricted appellant's direct examination?"
Third Assignment of Error:
"Did the court commit prejudicial error when it gave curative instructions to disregard anything about drugs?
 {¶ 3} On February 26, 2004, the authorities charged the appellant with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), and failing to drive in marked lanes in violation of R.C. 4511.33.
 {¶ 4} On July 20, 2004, the court held a jury trial. Ohio State Highway Patrol Trooper Shad Caplinger testified that on February 26, 2004, at approximately 2:50 a.m., he observed the appellant's vehicle weaving outside the State Route 23 marked lane of travel. Appellant's vehicle crossed the white fog line by at least a tire width and again crossed the fog line on four or five different occasions. Trooper Caplinger then stopped the vehicle.
 {¶ 5} When he first contacted the appellant, the vehicle's driver, she was smoking a cigarette. He noticed her bloodshot and glassy eyes and he asked her if she had been drinking. She stated that she had not. When the trooper asked her to exit the vehicle she asked if she first could put on her shoes. As the appellant stepped from the vehicle, the trooper smelled alcohol and noticed that the appellant had difficulty putting on her coat. He stated that she could not find the zipper, so he pointed it out to her. Trooper Caplinger testified that the appellant's speech was fine and that she did not stumble when she exited her vehicle.
 {¶ 6} Trooper Caplinger decided to administer standardized field sobriety tests and he first administered the horizontal gaze nystagmus test (HGN). At trial, he explained the test as follows:
"Basically the [HGN] test is the involuntary jerking of your eye is what nystagmus is defined as. Basically if you've consumed alcohol or if you have taken any type of illegal substance, controlled substance or a drug, you cannot control your eye muscles and they will involuntarily jerk, if you have some type of one of those substances in your system. The [HGN] test is designed to detect that if it is present."
 {¶ 7} He explained that if a person has not consumed alcohol, the eyes move smoothly when following a stimulus. If the person has consumed alcohol, however, "those eyes will start jerking depending on what level [of alcohol] that you've consumed." He further stated that the HGN test consists of three clues, one in each eye, for a total of six clues. "[T]he first clue would be lack of smooth pursuit of one's eyes." The trooper explained the second clue as follows:
"The second clue that I'm checking for is nystagmus at a maximum deviation. We refer to it as maximum deviation but that would be where your eye's completely buried into the corner of your eye, if you could imagine looking over as far as you can see where's [sic] there's no white of your eye showing, totally taking out to look in your peripheral vision, so to speak, that is maximum deviation. The eye cannot move any farther over."
He stated that once he sees the maximum deviation point, he holds the stimulus there for at least four seconds.
 {¶ 8} Trooper Caplinger then explained the third clue:
"The third clue that I'm looking for is onset of nystagmus prior to a 45 degree angle, 45 degree angle meaning if you have what would be a maximum deviation, basically a 45 if you look at a 90 degree angle, which would be a right angle, 45 degrees would be about in the middle of that. Usually this occurs on or about someone's shoulder. If you're moving the stimulus then, once you get to about their shoulder, their eye's at about a 45 degree angle, at that point you hold the stimulus for at least four seconds. If you have nystagmus shown prior to getting to that 45 degree angle you hold the stimulus and see if that nystagmus is then shown."
 {¶ 9} The trooper stated that he also checked the appellant for vertical nystagmus:
 {¶ 10} "Basically vertical nystagmus is not shown if you're using alcohol. Vertical nystagmus has been proven that it's shown if someone has been using a controlled substance or has some other type of substance, sometimes prescription medications and what not will show a vertical nystagmus. By moving the [stimulus] vertically directly above their head, and having their eyes look up as far as they can see and then holding that stimulus for at least four seconds, you then see if the eye is involuntarily jerking vertically."
 {¶ 11} Trooper Caplinger testified that the appellant indicated all clues on both the HGN and the vertical nystagmus test. We note that the appellant did not object to the vertical nystagmus test testimony.
 {¶ 12} Trooper Caplinger then instructed the appellant on the walk and turn test. He stated that he advised her to keep her "feet heel to toe[,] without beginning the test[,] keep their arms down to their side, at which point she did move her feet several times from that position and could not maintain that position of keeping her heel to her toe." He had instructed her to turn to the left when she finished the first nine steps, but she turned to her right. As she finished the first nine steps, she asked whether she was to take nine steps back.
 {¶ 13} He also instructed her on the one leg stand test and gave a demonstration. When appellant began the test, "immediately * * * she raised her arms[;] the clue is if they're [sic] arms are approximately six inches or greater then that constitutes that they've raised their arms during the test. During my explanation I do say to keep your arms down to your side so her arms were up about waist high during the test. Then she placed her foot on the ground on two occasions, on [count] number twelve and on [count] number 22."
 {¶ 14} After he observed her performance on the three tests, Trooper Caplinger decided to arrest the appellant for driving under the influence. When he returned to her vehicle to lock it, he noticed two empty Bud Light bottles inside and he found a bottle opener on her key ring. Subsequently, at the Highway Patrol post he offered the appellant a urine test. She refused.
 {¶ 15} During cross-examination, the trial court did not permit appellant's counsel to ask the trooper about the appellant's marital problems. After the state re-examined the trooper, the court, over the appellant's objection, asked the trooper some questions. The court asked: "how many factors does it take to fail a test?" The trooper stated:
"Basically the National Highway Traffic Safety Administration [NHTSA] has come out with the NHTSA manual. It shows the probability and the validity of each [of the] three test that I performed. On the [HGN] test there's a total of six clues[;] however, four or more clues are detected it's a 77% probability and at the time that this manual I was trained on came out that the person would test over the legal limit which at that point was .10. At this time, since January 1 of 2004, the legal limit[`]s now dropped to.08 so it's a 77% probability [i]f you get four or more clues on the [HGN] test that they'll test over a .10 blood alcohol content."
 {¶ 16} Appellant's counsel then moved to strike the trooper's response, but the court declined.
 {¶ 17} The trial court judge also asked the trooper why he wanted the appellant to take a urine test. The trooper stated that it was because he detected vertical nystagmus, which told him that "there is something else in a person's system."
 {¶ 18} Appellant then testified that she had not consumed alcohol that evening.
 {¶ 19} When the trial court instructed the jury, it cautioned the jury regarding the evidence that the trooper asked the appellant to submit to a urine test:
"[E]vidence had been introduced indicating that she was asked but refused to submit to a chemical test of her urine to determine apparently the amount of alcohol in her system and the introduction of that evidence was for purposes of suggesting that perhaps she was under the influence. If you find the defendant refused to submit to the test you may, but are not required to consider this evidence along with all the other facts and circumstances in evidence in deciding whether or not the defendant was under the influence of alcohol at the time of the incident."
 {¶ 20} Appellant's counsel voiced no concern with the court's instructions.
 {¶ 21} During deliberations, a juror submitted a question regarding whether the defendant was under the influence of alcohol or drugs. The court instructed:
"[Y]ou notice that I didn't include in [the original instructions] that it means the defendant consumed some alcohol or drug of abuse or combination of alcohol and drug of abuse okay? And I did that because although you heard in evidence that the trooper gave her this test called * * * vertical nystagmus, that he said he gave because it indicates to him that there's a presence of drugs. I personally believe that the proper way to give the instructions for impaired driving is that, if they give that test, there has to be some other thing to go along with that. We need to find rolling papers, marijuana, crack pipe or something else rather than to force you to speculate that based on that test alone there may have been some drugs in her system okay? Alcohol has always been viewed differently in Ohio because there [are] so many indicia of it but drugs are unique and I like to have some other corroborating evidence before I charge on drugs so that's why I didn't give you a charge to consider drugs, drugs of abuse or a combination of them."
 {¶ 22} The court told the jury it can "discuss the testimony anyway you want because it really wasn't challenged or objected to and it wasn't (inaudible) but for purposes of the charge, okay, I only gave you a charge of alcohol." Appellant did not object.
 {¶ 23} After deliberations, the jury found the appellant guilty of driving under the influence of alcohol. Appellant timely appealed.
 I {¶ 24} In her first assignment of error, the appellant argues that the trial court erred by sua sponte questioning Trooper Caplinger. Appellant specifically complains about the court's question that elicited the following response from the trooper: "[A]ny time vertical nystagmus is detected, it shows me there is something else in a person's system. Vertical nystagmus is not shown unless there is some type of other substance in someone's system. * * * At this point, at the post since I detected vertical nystagmus I then offered her a urine test. Basically the urine test would be sent to the crime lab and they would detect more than just alcohol in their system." Appellant asserts that "[t]he judge asked a question that led the jury to believe that Defendant refused a urine test because she had illegal drugs in her system."
 {¶ 25} Appellant additionally argues that the trial court abused its discretion by allowing the trooper to testify that a 77% probability exists that an individual will test over .10 based upon the trooper's observance of four or more HGN clues. She asserts, in essence, that by allowing this testimony, the jury convicted the appellant of driving with a prohibited blood-alcohol concentration (under R.C. 4511.19(A)(3)) instead of driving under the influence (under R.C. 4511.19(A)(1)). She asserts that just because the HGN test shows a statistical probability that a person will test over .10 does not mean that a person who tests over .10 exhibits impaired driving within the meaning of R.C.4511.19(A)(1). Appellant contends: "The only explanation for the guilty verdict is that the jury believed [appellant] would have tested on a 0.10 if she had not refused the test and/or she was under the influence of drugs." She further asserts that "the HGN result was not admissible into evidence at all." We presume that she means the vertical nystagmus test.
 {¶ 26} A trial court has discretion to question witnesses. Evid.R. 611; Evid.R. 614; State v. Clemans (1997), 121 Ohio App.3d 337, 339,700 N.E.2d 33. Evid.R. 614(B) allows a trial court to questions witnesses in an impartial manner. A trial court must, however, scrupulously limit its questions so as to not indicate, consciously or unconsciously, its opinion regarding the evidence or witness credibility. State v. Prokos
(1993), 91 Ohio App.3d 39, 44, 631 N.E.2d 684; see, also, State exrel. Wise v. Chand (1970), 21 Ohio St.2d 113, 256 N.E.2d 613, paragraph three of the syllabus. "Where a jury might infer the court's opinion of a witness through the persistence, tenor, range, or intensity of its questions, the interrogation is prejudicially erroneous. While the court can ask neutrally phrased questions, its questions should not suggest disbelief in a witness's testimony." Prokos, 91 Ohio App.3d at 44
(citations omitted).
 {¶ 27} In reviewing whether a trial court erred by questioning a witness, we apply the abuse of discretion standard of review. Clemans,121 Ohio App.3d at 339. Thus, absent an abuse of discretion, we will not reverse the trial court's decision. We note that the term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests the trial court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Xie (1992), 62 Ohio St.3d 521, 527,584 N.E.2d 715.
 {¶ 28} In the case at bar, we believe that the trial court's questioning of Trooper Caplinger did not constitute an abuse of discretion. Nothing about the questions suggested the court's particular opinion or view of the witness. Instead, the court's questions were neutrally phrased and concerned the results of the field sobriety tests. Simply because the questions elicited responses appellant may not like does not mean that the trial court abused its discretion.
 {¶ 29} More problematic, however, is Trooper Caplinger's testimony regarding the statistical probability that a person who exhibits four or more clues on the HGN test will test over .10. Appellant contends that by allowing this testimony, the jury actually convicted her of an R.C.4511.19(A)(3) violation instead of a R.C. 4511.19(A)(1) violation (with which she was charged).
 {¶ 30} Generally, we note that the decision to admit or exclude relevant evidence is within the discretion of the trial court. State v.Bey (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484.
 {¶ 31} In State v. Bresson (1990), 51 Ohio St.3d 123, 123,554 N.E.2d 1330, the court held:
"A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4)."
 {¶ 32} The Ohio Supreme Court recognized that HGN tests are reliable and admissible in the context of a suppression hearing to determine probable cause.
 {¶ 33} In Bresson, the defendant was charged with violating R.C.4511.19(A)(1) and 4511.19(A)(3). When the officer administered the HGN test, the defendant exhibited all six points. At trial, the officer testified that a person who exhibits all six points on the HGN test "has a very good chance of testing over 0.10 percent, i.e., ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath on a chemical test." Id. at 123.
 {¶ 34} Thus, the Ohio Supreme Court held that the trial court did not abuse its discretion by allowing the officer to testify at the suppression hearing as to the HGN test. The court observed that the HGN test is considered "the single most accurate field test to use in determining whether a person is alcohol impaired." Bresson, citing U.S. Department of Transportation, National Highway Safety Administration, Improved Sobriety Testing (1984) 4. The court wrote: "[T]he HGN test has been shown to be a reliable test, especially when used in conjunction with other field sobriety tests and an officer's observations of a driver's physical characteristics, in determining whether a person is under the influence of alcohol." Id. at 129. The court cautioned that while the results of an HGN may be admitted at trial, the officer "may not testify as to what he or she believes a driver's actual or specific BAC level would be, based solely on the HGN test results." Id. at 129. The court stated that the results of an HGN tests may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4)."[1] Id. at 130.
 {¶ 35} In State v. Sanders (1998), 130 Ohio App.3d 789, 799,721 N.E.2d 433, the court rejected the argument that the results of an HGN test are irrelevant in an R.C. 4511.19(A)(1) prosecution. The court explained:
"This is a unique argument but one that is clearly without merit. Pursuant to the Supreme Court's decision in Bresson, HGN testing can be used to establish probable cause as to whether a person is driving under the influence of alcohol because there is a correlation between blood-alcohol concentration and nystagmus. Id. at 124-125.
Additionally, the court stated that according to the United States Department of Transportation, "the HGN test is the single most accurate field test to use in determining whether a person is alcohol impaired." Id. at 125. Thus, the logical conclusion is that an HGN test is one of several valid tools that can be used to indicate whether a person has been driving while alcohol-impaired, in violation of R.C. 4511.19(A)(1)."
 {¶ 36} We acknowledge that a person's physical condition, driving performance and level of impairment are the most critical issues under a R.C. 4511.19(A)(1) under the influence charge. Nevertheless, the fact that a person has consumed alcohol is an important factor (we note that in the case sub judice the appellant testified that she did not consume any alcohol). Thus, we agree with Sanders that the HGN test is relevant in determining whether a driver ingested alcohol and is impaired (under 4511.19(A)(1)). The fact that a person has consumed alcohol is an important factor in determining whether a person is driving while under the influence.
 {¶ 37} In the case at bar, we note that the trooper did not testify that the HGN test results would show appellant's exact alcohol concentration. Instead, his testimony indicated to the jury that because the appellant exhibited more than four clues on the test, a 77% probability exists that the appellant would test over .10. We believe, however, that testimony to suggest a specific
 {¶ 38} mathematical probability that the appellant would have tested over the statutory limit if she had taken a test is problematic. We believe that trial testimony (not testimony before a judge at a suppression hearing) of this nature is akin to testimony about the expected exact test result. While we do not question the use of HGN to establish that a person has consumed some amount of alcohol, the notion that an officer may testify and estimate that a person, based upon his or her HGN results, will test over the statutory limit a certain percentage of the time is alarming. Nevertheless, we note substantial other evidence supports the jury's guilty verdict. "`To prove impaired driving ability, the state can rely on physiological factors (e.g., slurred speech, bloodshot eyes, odor of alcohol) and coordination tests (e.g., field sobriety tests) to demonstrate that a person's physical and mental ability to drive is impaired.'" State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37, 801 N.E.2d 446 (quoting State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528).
 {¶ 39} In the case sub judice, the trooper testified that he witnessed the appellant's vehicle weave and cross the fog line on four or five different occasions. He smelled alcohol as she stepped from the vehicle and he noticed that her eyes were glassy and bloodshot. Furthermore, he found two empty bottles of beer in her vehicle and noted that she had difficulty zipping her coat. When the trooper administered the walk and turn test, appellant had difficulty following the instructions. During the one leg stand test, appellant raised her arms and twice put her foot on the ground. These facts could lead a reasonable jury to find that appellant had been driving while under the influence of alcohol. Thus, we believe that if any error occurred, it is harmless. See Crim.R. 52 (stating that harmless errors shall be disregarded); State v. Brown,100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506 (disregarding error that did not affect the outcome of the case). (See, also, State v.Cheyney (Jan. 20, 1989), Medina App. No. 2810-M that concluded that additional evidence supported the arresting officer's opinion testimony beyond his statement that the defendant's HGN results indicated a probability in excess of 80% that the defendant was under the influence of alcohol.)
 {¶ 40} Appellant next complains that the trooper's testimony about the results of the vertical nystagmus test was improper. Assuming without deciding that appellant is correct,[2] we find that any error is harmless. First, the trial court instructed the jury to disregard evidence that appellant may have had drugs in her system and to focus on whether she had alcohol in her system that impaired her driving. Juries are presumed to follow the instructions that they are given. Second, as we noted above, the state presented substantial evidence that the appellant exhibited alcohol-impaired driving. The trooper observed her weaving and driving outside the marked lanes. He smelled alcohol and noticed that her eyes were bloodshot and glassy. She performed poorly on the HGN test, failed to follow instructions on the walk and turn test, and raised her arms during the one leg stand test. These facts support a reasonable jury's determination that the appellant had driven while under the influence of alcohol.
 {¶ 41} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 42} In her second assignment of error, the appellant asserts that the trial court erred by restricting her direct examination concerning the facts of her divorce, her argument with her husband, and her fear of him taking and disposing of her vehicle and property. She contends that these factors influenced her decision to refuse the breath test. Appellant further asserts that the court erred by prohibiting her from presenting evidence that she and her husband were having marital problems. She claims that such evidence shows: "A wife does not drive the same when she believes a vicious husband is about to attack her."
 {¶ 43} We initially note that the appellant did not proffer all of the evidence she sought to introduce. Thus, she has not preserved this issue for review. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190,813 N.E.2d 637. Assuming, however, that the appellant had properly preserved the issue, we find no error. As previously noted, the trial court possesses broad discretion when determining the admissibility of evidence. In the case sub judice, the trial court did not abuse its discretion by determining that appellant's marital troubles are not relevant to an R.C. 4511.19(A)(1) prosecution or to her defense.
 {¶ 44} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 45} In her third assignment of error, the appellant asserts that the trial court erred by giving a curative instruction to disregard evidence about drugs. She contends that the curative instruction did not cure the damage done. We disagree.
 {¶ 46} Initially, we note that the appellant did not object to the court's instruction. Therefore, she failed to preserve the issue for review. See, e.g., State v. Wade (1978), 53 Ohio St.2d 182, 188,373 N.E.2d 1244, 1248; State v. Johnson (1999), 134 Ohio App.3d 586,590, 731 N.E.2d 1149. Assuming appellant had preserved this issue, we find no error. Jurors are presumed to follow curative instructions to disregard evidence. See State v. Johnson (1994), 71 Ohio St.3d 332, 340,643 N.E.2d 1098; State v. Zuern (1987), 32 Ohio St.3d 56, 61,512 N.E.2d 585. We recognize, that occasionally curative instructions may not sufficiently eliminate the prejudicial impact of highly inflammatory evidence. See State v. Davis (1975), 44 Ohio App.2d 335, 344,338 N.E.2d 793; State v. Green (Mar. 18, 1999), Franklin App. No. 98AP-633; State v. Sinkfield (Oct. 2, 1998), Montgomery App. No. 16277; see, also, State v. Talbert (1986), 33 Ohio App.3d 282, 285-286,515 N.E.2d 968. A party can rebut the presumption that curative instructions remedy a mistake by showing that the jury could not have ignored the evidence and that serious prejudice likely occurred. SeeState v. Westwood, Athens App. No. 01CA50, 2004-Ohio-2445; United Statesv. Gonzales-Vazquez (C.A.1 2000), 219 F.3d 37, 48; United States v.Rullan-Rivera (C.A.1 1995), 60 F.3d 16, 18; see, also, Greer v. Miller
(1987), 483 U.S. 756, 766, 107 S.Ct. 3102, 97 L.Ed.2d 618, at fn. 8 (stating that courts generally presume a jury follows instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the instruction and a strong likelihood that the evidence would be devastating to the defendant); Bruton v.United States (1968), 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476
(although a jury is ordinarily expected to follow instructions to disregard evidence, there are some cases in which the risk that the jury will not, or cannot, follow those instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored).
 {¶ 47} In the case at bar, we presume that the jury followed the trial court's instruction to disregard any evidence that the appellant may have had drugs in her system. Appellant failed to sufficiently establish that the jury could not have ignored this type of evidence and that serious prejudice likely occurred in this particular case.
 {¶ 48} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion
[1] Judge Painter has criticized Bresson's rationale:
"Although the horizontal gaze nystagmus test results might be used appropriately on a limited basis solely as a component of a police officer's subjective determination of probable cause for arrest, * * * the results should not be used in the state's case-in-chief without expert foundation. The Supreme Court in Bresson found that the test has been shown to be a reliable indicator of blood alcohol content levels. This finding is not supported by any expert testimony in the Bresson case at the trial level or in any other Ohio appellate case where the test was held admissible without any foundation demonstrating the reliability of the horizontal gaze nystagmus test. However, though of questionable logic, the Bresson case is the law in Ohio."
Painter, Ohio Driving Under the Influence Law (2004 Ed.), Section 10:17 (citation and footnotes omitted).
[2] See State v. Holt (2002), 119 Ohio Misc.2d 1, 12, 772 N.E.2d 203
("While the results of the VGN may be useful in indicating the presence of drugs rather than alcohol, the use of drugs is not at issue in this case. Furthermore, this court is not aware of any authority in Ohio which indicates approval of the VGN as a tool to assess alcohol consumption."); State v. Anez (2000), 108 Ohio Misc.2d 18, 28,738 N.E.2d 491 ("The court finds it necessary to exclude this information from consideration because the vertical gaze nystagmus test has not been approved for usage in the state of Ohio as a tool to assess alcohol consumption.").