{¶ 1} Defendant-appellant, Anthony Norman, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Norman was charged with four counts of aggravated robbery, two counts of kidnapping, one count of theft, one count of felonious assault, and one count of having weapons while under disability. The first count of aggravated robbery contained a one-year firearm specification, and the remaining counts each contained a one-year and three-year firearm specification. Norman pleaded not guilty, and a jury trial ensued.
 {¶ 3} On July 21, 2005, around 9:30 p.m., a male entered the Imperial Deli, located at East 123rd Street and Imperial Avenue in Cleveland, armed with a gun. He wore a red baseball cap and had a red bandana covering his face. He ordered everyone in the store to the ground.
 {¶ 4} In the meantime, Jeffrey Peek, an employee at the deli, was bringing stock up from the basement when he noticed people lying on the floor. He saw his wife lying on the floor, and he saw a gunman pointing a gun in his wife's direction. The gunman walked behind the counter, and Peek went into the walk-in cooler and called 911. He did not come out until he saw the customers standing up.
 {¶ 5} Ismalia Sy worked selling clothes to the people in the neighborhood in front of the Imperial Deli. He had been selling clothes there for approximately four years. At closing time, he would pack up his wares and store them in the deli.
 {¶ 6} Sy testified that on the night of the robbery, he had packed up his clothes and was in the store talking to "Eddie," the store owner's nephew. A man named "Pooh" entered the store and spoke with Eddie briefly. After Pooh left, a male entered the store. He was wearing a red "do-rag" over his face and was holding a gun. Sy recognized him from the neighborhood, and from selling clothes to him. While Sy was lying on the floor, he asked the gunman why he was doing this. The gunman told him to turn around and not to look at him. Sy tried to reason with him and talk him out of what he was doing. The gunman went through Sy's pockets and took what he had earned that day, approximately $300 in cash. The gunman hit Sy in the face with the gun. Sy testified that he remained on the floor until the gunman left.
 {¶ 7} The gunman then went around the counter and took the cash that was stored in an envelope behind the money order machine. He then grabbed Eddie off the floor, stuck the gun in the back of his head, and made him open the register. He took the money and left.
 {¶ 8} Assad Tayed testified that his wife owns the store but he runs it. He was out of the country when the robbery occurred. He testified that his nephew, Emad Tayed, a.k.a. "Eddie," was in charge of running the store in July 2005. Assad testified that the store was equipped with seven video cameras and that $5,600 in cash was taken during the robbery. He testified that he worked with the detectives and his friends to find out who robbed the store.
 {¶ 9} Assad was able to direct the detectives to an informant. The detectives learned a suspect's name from the informant. The street name of the suspect was "Scant Ant." Through the police computer Norman's name was associated with the street name given. A photo array was prepared with Norman's picture. Eddie was shown the photo array but did not make an identification.
 {¶ 10} In October 2005, while investigating a burglary at Sy's new store, the detective learned that Sy was robbed at the Imperial Deli in July. Sy was shown the photo array and picked out Norman.
 {¶ 11} At trial, the jury viewed the videotape of the robbery and listened to the 911 tape. Norman was convicted of three counts of aggravated robbery with gun specifications, two counts of kidnapping with gun specifications, one count of felonious assault with gun specifications, and one count of having a weapon while under disability. He was sentenced to a total of ten years in prison. Norman appeals, advancing two assignments of error for our review.
 {¶ 12} Norman's first assignment of error states the following:
 {¶ 13} "Witness conveyance of unfairly prejudicial information deprived the appellant of a fair trial."
 {¶ 14} Norman complains about the following testimony:
 "STATE: Was there anyone else present that you spoke with besides, just yes or no, besides the nephew?
 "DET. FOSTER: Present during the robbery?
 "STATE: Yes.
 "DET. FOSTER: My informant was."
 {¶ 15} Norman argues that Detective John Foster's testimony regarding the informant improperly vouched for the accuracy of the identification made by Sy, an earlier witness. Norman argues that the jury had learned that an anonymous informant provided the street name of the suspect in the robbery, and that the police computer matched the street name to Norman. The testimony revealed that a photo of Norman was obtained and shown to the informant. The detective was asked whether the informant made any type of identification, to which the detective stated "yes." The detective testified that after the meeting with the informant, Norman became the primary suspect and a photo array was prepared. Sy identified Norman from the photo array. The foregoing testimony implied that the informant was present during the robbery and also identified Norman. However, when asked by the defense attorney during cross-examination, "You never developed a suspect, Detective, from anyone who actually was there during the robbery, correct?" the detective replied, "No, I didn't."
 {¶ 16} The defense objected to the detective's aforementioned testimony during direct examination, and the court sustained the objection. Still, Norman argues that the testimony was improper and prejudicial. We disagree with Norman's assertion that the detective was vouching for Sy's identification. The detective was merely trying to explain his investigation. Nevertheless, we agree that his response was improper because the detective did not have personal knowledge that the informant was present during the robbery. Evid.R. 602. Even if the detective was able to identify the informant, from the videotape, as being one of the victims in the store, his response was still improper because there was insufficient foundation for this testimony.
 {¶ 17} Nonetheless, immediately after the detective testified, the trial court instructed the jury, as follows:
 "I want to caution the jurors at this point in time and I need you to listen carefully to this.
 "You are to completely disregard any testimony of a CI or anything that the CI may have said or written. Is that clear? You may want to notate that in your book, all right, because you may have written that evidence. Disregard the testimony that was stated by the confidential informant. All right. Very good."
 {¶ 18} Jurors are generally presumed to follow the trial court's instructions, including instructions to disregard testimony. State v.Herring, 94 Ohio St.3d 246, 254, 2002-Ohio-796. We recognize that occasionally curative instructions may not sufficiently eliminate the prejudicial impact of highly inflammatory evidence. See State v.Davis (1975), 44 Ohio App.2d 335, 344, State v. Green (Mar. 18, 1999), Franklin App. No. 98AP-633; State v. Sinkfield (Oct. 2, 1998), Montgomery App. No. 16277. A party can rebut the presumption that curative instructions remedy a mistake by showing that the jury could not have ignored the evidence and that serious prejudice likely occurred. State v. Martin, Pickaway App. No. 04CA24, 2005-Ohio-1732.
 {¶ 19} In this case, we find that Norman was not prejudiced by this testimony and that the curative instruction sufficiently eliminated the impact of the improper testimony. Therefore, we find that Norman was not denied a fair trial. Accordingly, Norman's first assignment of error is overruled.
 {¶ 20} Norman's second assignment of error states the following:
 {¶ 21} "The verdicts were against the manifest weight of the evidence."
 {¶ 22} Norman argues that Sy's identification was unreliable because the gunman's face was partially covered by a bandana and Sy did not identify Norman as the robber until three months later.
 {¶ 23} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d 54, 68,2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 24} After examining the entire record, weighing all the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the jury clearly lost its way. Sy did not waver in his identification of Norman as the robber. Sy knew Norman's face and recognized his voice, from years of dealing with him. While Norman was sticking a gun in Sy's face and going through his pockets, Sy testified that he said the following to Norman: "I got no problem with you, so why you do that? * * * I said no you don't have to do that. I never had a problem with you. * * * I told him, I know you, you don't have to do that." Sy let Norman know that he recognized him and knew him. Thereafter, Norman told Sy not to look at him and then hit him in the face with the gun. We conclude that Sy's identification was credible and reliable, and that all the elements of the crimes have been proved beyond a reasonable doubt. Norman's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P. J., and MELODY J. STEWART, J., CONCUR.