The STATE of Ohio, Appellee,

v.

LANIER, Appellant.

[Cite as *State v. Lanier,* 180 Ohio App.3d 376, 2008-Ohio-6906.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080162.

Decided Dec. 31, 2008.

378

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Roger W. Kirk, for appellant.

DINKELACKER, Judge.

{¶ 1} Defendant-appellant, Daniel Lanier, appeals his convictions for one count of attempted murder [1] and two counts of felonious assault,[2] all with accompanying firearm specifications. We affirm the trial court's findings of guilt, but because two of the convictions should have been merged for sentencing, we vacate the sentences imposed and remand the case for resentencing.

## I. Facts

{¶ 2} Evidence presented at a jury trial showed that Biondi Stevenson and his cousin, Ronald Dickerson, learned that Josh and Jeremy Griffin wanted to fight them. Stevenson had been Jeremy's friend and had dated Josh and Jeremy's sister, Cecily. Lanier was dating Cecily at that time.

{¶ 3} At approximately noon, Stevenson and Dickerson went to the Griffin home to try to find out the reason for the dispute. When they went up to the house, Lanier confronted them. He told them that he would "body" them and put them "in a box," slang terms for killing them. Stevenson and Dickerson left the house and went to their home. During that day, they kept receiving text messages saying that Jeremy and Josh still wanted to fight.

{¶ 4} That night, Stevenson and Dickerson drove past the Griffin home. Because traffic had backed up on the street, they were stopped in front of the house. Lanier and several others saw them and tried to pull them out of their cars, but they were able to drive away.

{¶ 5} They drove a short distance, to Stevenson's home. Before long, Lanier and three other men jumped out of a car. Dickerson tried to run, but the three other men caught him and began beating him. Lanier approached Stevenson, pulled out a gun, and started shooting at him. One of the shots hit Stevenson, and he yelled that he had been shot. Lanier continued to shoot and fired at least four more shots until the gun jammed.

{¶ 6} Stevenson ran to the side of the house and his mother called for help. Lanier and the men with him left the scene. Stevenson did not know Lanier's name, but was able to identify him from a photographic lineup.

## II. Discovery

{¶ 7} In his first assignment of error, Lanier contends that he was denied due process when the state failed to disclose, until the day of trial, voluminous

---

1. R.C. 2903.02 and 2923.02(A).

2. R.C. 2903.11(A)(1) and 2903.11(A)(2).

tape-recorded statements of Lanier's conversations with his girlfriend while he was in jail. In his second assignment of error, he contends that the trial court erred by not excluding the recorded statements from evidence, since the state had failed to provide them in discovery. These assignments of error are not well taken.

{¶ 8} Crim.R. 16(B)(1)(i) requires the state to disclose relevant recorded statements made by the defendant. In *State v. Lewis*,[3] this court held that recorded telephone calls between the defendant and his mother and girlfriend were not "statements" that needed to be disclosed under Crim.R. 16(B). We stated, "The rule does not specifically define the word 'statement' but we believe that the recorded phone conversation to defendant's mother and girl friend does not fall within the concept of a formal, detailed presentation of facts to law enforcement personnel that the plain meaning of 'statement' connotes."

{¶ 9} We repeated that holding several years later in *State v. Dorn*.[4] We stated that "no provision of Crim.R. 16(B) mandates the disclosure of inculpatory statements made by a defendant to others except those made to the prosecution or to law enforcement." Consequently, the tape-recorded statements of conversations between Lanier and his girlfriend in this case were not statements within the meaning of Crim.R. 16(B) that the state was required to disclose.

{¶ 10} Further, even if the state were required to disclose the tape-recorded statements, we could not hold that the trial court abused its discretion by admitting the statements into evidence.[5] The state's failure to provide discovery does not amount to reversible error unless the defendant shows (1) that the prosecution's failure to disclose was willful and (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by the admission of the statement into evidence.[6]

{¶ 11} Nothing in the record shows that the state willfully hid the recordings. While the state did not provide the recordings until the day that the trial was originally scheduled, the trial court continued the case. Due to the large number of recordings, the court also ordered the prosecutor to provide the relevant conversations to Lanier in a form that he could more easily use. The trial did not actually occur until several weeks later, and Lanier had ample time to review the

3. *State v. Lewis* (June 5, 1985), 1st Dist. Nos. C–840596 and C–840607, 1985 WL 8865.

4. *State v. Dorn* (Dec. 24, 1998), 1st Dist. No. C–970976, 1998 WL 892237.

5. See *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, syllabus.

6. *State v. Moore* (1988), 40 Ohio St.3d 63, 66, 531 N.E.2d 691; *State v. Johnson* (1999), 134 Ohio App.3d 586, 592, 731 N.E.2d 1149.

recordings. Under the circumstances, he did not show that he suffered any prejudice due to the state's late disclosure of the recordings.[7]

### III. Prosecution's Closing Argument

■ {¶ 12} Lanier also argues under these assignments of error that the state's closing argument about the conversations on the tape and other issues was improper. The test for prosecutorial misconduct is (1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights.[8] The conduct of the prosecuting attorney during trial cannot be grounds for error unless it deprives the defendant of a fair trial.[9]

{¶ 13} Lanier failed to object to the comments that he now complains were improper. Thus, he is precluded from raising the issue on appeal unless the error rises to the level of plain error.[10] Our review of the prosecutor's entire argument shows that even if the comments were improper, none of the instances of which Lanier complains was so egregious as to affect his substantial rights or to deny him a fair trial. They certainly did not rise to the level of plain error.[11] Consequently, we overrule Lanier's first and second assignments of error.

### IV. Weight and Sufficiency

■ {¶ 14} In his fourth assignment of error, Lanier contends that the evidence was insufficient to support his convictions. Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of felonious assault under R.C. 2903.11(A)(1) and (A)(2) and attempted murder under R.C. 2903.02(A) and 2923.02(A), along with the accompanying firearm specifications. Therefore, the evidence was sufficient to support the convictions.[12]

■ {¶ 15} Lanier argues that no forensic evidence connected him to the shooting. But no rule of law exists that a witness's testimony must be corrobo-

---

7. See *Johnson* at 592–593, 731 N.E.2d 1149.

8. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; *State v. Williams*, 1st Dist. Nos. C–060631 and C–060668, 2007-Ohio-5577, 2007 WL 3036611, ¶ 49.

9. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203; *Williams* at ¶ 49.

10. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 444 N.E.2d 1332; *State v. Burrell*, 1st Dist. No. C–030803, 2005-Ohio-34, 2005 WL 27469, ¶ 24.

11. See *Burrell* at ¶ 26; *State v. Hirsch* (1998), 129 Ohio App.3d 294, 309–310, 717 N.E.2d 789.

12. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Russ*, 1st Dist. No. C–050797, 2006-Ohio-6824, 2006 WL 3759556, ¶ 13.

rated by physical evidence.[13]  Lanier also argues that the state's witnesses were not credible.  Matters as to the credibility of evidence are for the trier of fact to decide.[14]

{¶ 16} Lanier further argues that his convictions were against the manifest weight of the evidence.  After reviewing the record, we cannot say that the trial court lost its way and created such a manifest miscarriage of justice that we must reverse Lanier's convictions and order a new trial.  Therefore, his convictions were not against the manifest weight of the evidence, and we overrule his fourth assignment of error.[15]

## V.   Allied Offenses of Similar Import

{¶ 17} In his third assignment of error, Lanier argues that the trial court erred when it sentenced him on all three counts of the indictment.  He argues that the two counts of felonious assault and the one count of attempted murder all involved allied offenses of similar import.  This assignment of error has some merit, although we do not agree entirely with Lanier's argument.

### A.   A Two–Part Test

{¶ 18} In *State v. Cabrales,*[16] the Ohio Supreme Court clarified the law of allied offenses.  It began by stating that "[t]his court has recognized that R.C. 2941.25 requires a two-step analysis."[17]  The first step requires a comparison of the elements of the offenses.  If the elements of the offenses correspond to such a degree that commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.[18]

{¶ 19} If the court finds that the offenses are allied offenses, it must proceed to the second step, which involves a review of the defendant's conduct to determine whether the offenses were committed separately or with a separate

---

**13.**  *State v. Byrd,* 1st Dist. No. C–050490, 2007-Ohio-3787, 2007 WL 2141586, ¶ 34;  *State v. Nix,* 1st Dist. No. C–030696, 2004-Ohio-5502, 2004 WL 2315035, ¶ 67.

**14.**  *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116;  *Williams* at ¶ 45.

**15.**  See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541;  *Williams* at ¶ 47; *Russ* at ¶ 22–23.

**16.**  *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181.

**17.**  Id. at ¶ 14.

**18.**  Id., quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.

animus as to each. If the court determines that the offenses were committed separately, the defendant may be convicted of both offenses.[19]

## B. Step One – Abstract Comparison of the Elements

{¶ 20} In discussing the first step, the Supreme Court noted that its previous decision in *State v. Rance*,[20] which required an abstract comparison of the elements of the offenses, had caused much confusion and that courts had misinterpreted that decision.[21] The court held, "It is clear that interpreting *Rance* to require a strict textual comparison under R.C. 2941.25(A) conflicts with legislative intent and causes inconsistent results. Accordingly, we clarify that in determining whether [the] offenses are allied offenses of similar import under R.C. 2941.25(A), *Rance* requires courts to compare the elements of [the] offenses in the abstract, i.e., without considering the evidence in the case, but does not require an exact alignment of [the] elements." [22] Thus, if the elements of the offenses are so similar that commission of one will result in commission of the other, then the offenses are allied offenses of similar import.[23]

{¶ 21} The court in *Cabrales* employed a more pragmatic approach to allied-offense issues.[24] But it did not abandon the two-part test that courts have traditionally applied to determine whether offenses are allied offenses of similar import.[25] The first part of the test is still an abstract comparison of the elements of the offenses without reference to the facts of the case, using a common-sense approach.[26]

{¶ 22} Lanier argues that attempted murder and felonious assault are allied offenses of similar import that were not committed separately or with a separate animus. Therefore, he argues, he could have been convicted of only one offense. But his analysis is faulty. He was charged with felonious assault under both R.C. 2903.11(A)(1) and (A)(2). This court has held that those two offenses

---

19. Id.

20. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.

21. *Cabrales* at ¶ 15–26.

22. Id. at ¶ 27.

23. Id. at paragraph one of the syllabus.

24. *State v. Williams*, 8th Dist. No. 89726, 2008-Ohio-5286, 2008 WL 4531946, ¶ 31.

25. See also *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 18–19.

26. Id. at ¶ 21; *Cabrales* at ¶ 22 and 27.

are allied offenses of similar import.[27] Basically, he argues that the felonious assaults should have merged, and that the one merged felonious assault should have merged with the attempted murder. This argument relies on the facts of the case and ignores the first part of the two-part test. We must separately compare in the abstract the elements of both counts of felonious assault under R.C. 2911.03(A)(1) and (A)(2) with the elements of attempted murder.

{¶ 23} R.C. 2903.02(A), murder, provides, "No person shall purposely cause the death of another * * *." R.C. 2923.02(A), attempt, provides, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Thus, the state must prove that the accused had purposely or knowingly engaged in conduct, that if successful, would have resulted in the victim's death.[28]

{¶ 24} Felonious assault under R.C. 2903.11(A)(2) provides, "No person shall * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." We have little trouble holding that attempted murder and felonious assault under this section are allied offenses of similar import, although their elements do not align exactly. Every time an individual commits an attempted murder and engages in conduct that, if successful, would result in the victim's death, that person is attempting to cause the victim physical harm.

{¶ 25} We reach a different conclusion about felonious assault under R.C. 2903.11(A)(1), which provides, "No person shall knowingly * * * cause serious physical harm to another * * *." Attempted murder requires the offender to attempt to cause the victim's death, while felonious assault requires the offender to actually cause serious physical harm.[29] By its definition, attempted murder requires only that the accused engaged in conduct that, if successful, would have resulted in murder. The determining factor is the accused's intent, not the result.[30] Felonious assault under subsection (A)(1) requires a completed offense.

{¶ 26} Thus, while the elements of the two offenses may align in some instances, many other instances may occur in which the commission of one offense will not necessarily result in commission of the other. Therefore, they

27. *State v. Smith*, 1st Dist. No. C–060991, 2008-Ohio-2561, 2008 WL 2220397, ¶ 21–22; *State v. Garey Smith*, 1st Dist. No. C–070216, 2008-Ohio-2469, 2008 WL 2154770, ¶ 36–42.

28. *Byrd* at ¶ 36.

29. *State v. Hardges*, 9th Dist. No. 24175, 2008-Ohio-5567, 2008 WL 4724692, ¶ 45.

30. See *Byrd* at ¶ 39.

are not allied offenses of similar import.[31] Consequently, the analysis regarding those two offenses is at an end. Lanier could have been convicted of both attempted murder and felonious assault under R.C. 2903.11(A)(1), and we need not determine if they were committed separately.

{¶ 27} We are aware that, since *Cabrales*, at least one other court has held differently.[32] But we believe that that court failed to conduct the two-part test. It did not compare the offenses in the abstract, as *Cabrales* still requires, but instead looked to the facts of the individual case.[33]

{¶ 28} In sum, we hold that felonious assault under R.C. 2903.11(A)(1) and attempted murder under R.C. 2903.02(A) and 2923.02(A) are not allied offenses of similar import, and that Lanier could have been convicted of both. Felonious assault under R.C. 2903.11(A)(2) and attempted murder are allied offenses, and we must proceed to step two of the analysis with respect to them.

### D. Step Two—Review of Defendant's Conduct

{¶ 29} Because felonious assault under subsection (A)(2) is an allied offense of attempted murder, we must review the defendant's conduct to determine if the offenses were committed separately or with a separate animus as to each. If they were not, then Lanier could have been convicted of only one of those offenses.

{¶ 30} The state argues that because Lanier filed several shots at Stevenson, he could have been convicted of several attempts. We disagree. In *Smith*, the defendant shot at several police officers, striking one in the knee. Though his gun jammed, he continued to try to fire more shots at the officers. We held that the defendant could not be convicted of two counts of felonious assault under both subsections (A)(1) and (A)(2) for the same conduct against the same victim.[34]

{¶ 31} We find no material difference between the facts of this case and the facts in *Smith*. Because, like in *Smith*, the two offenses in this case involved the same victim and the same conduct, Lanier could have been convicted of only one of them. Therefore, the trial court should have merged the felonious-assault count under R.C. 2903.11(A)(2) and the attempted-murder count for sentencing.

---

31. Accord *Hardges* at ¶ 45.

32. See, e.g., *Williams* at ¶ 26–33; *State v. Sutton*, 8th Dist. No. 90172, 2008-Ohio-3677, 2008 WL 2833644, ¶ 88–93.

33. See *Hardges* at ¶ 44–45.

34. *Smith* at ¶ 22–27.

{¶ 32} In sum, we hold that the trial court could have convicted Lanier of attempted murder and felonious assault under R.C. 2903.11(A)(1). He should have been sentenced for only those two offenses. Consequently, we sustain Lanier's assignment of error in part, vacate the sentences imposed, and remand the cause for resentencing. We affirm the trial court's judgment in all other respects.

## VI. Certification

{¶ 33} We find our decision in this case to be in conflict with that of the Eighth Appellate District in *Williams* and *Sutton*. Consequently, under the authority of Section 3(B)(4), Article IV, Ohio Constitution, we certify the following question of law to the Ohio Supreme Court:[35] "Are attempted murder under R.C. 2903.02(A) and 2923.02(A) and felonious assault under R.C. 2903.11(A)(1) allied offenses of similar import under the test set forth in *Cabrales*?"

Affirmed in part,<br>sentences vacated,<br>and cause remanded.

SUNDERMANN, P.J., and PAINTER, J., concur.

PAINTER, J., concurring.

{¶ 34} I concur in Judge Dinkelacker's analysis, given the weird state of the law. But I continue to believe that the Ohio Supreme Court needs to abrogate *State v. Rance*[36] in its entirety.

---

35. See also *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 596, 613 N.E.2d 1032; *Advent v. Allstate Ins. Co.*, 10th Dist. No. 06AP–103, 2006-Ohio-6791, 2006 WL 3743089, ¶ 2.

36. *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.