DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant Jason Fox appeals his conviction on one count of trafficking in drugs. Fox contends that the Washington County Court of Common Pleas erred by not suppressing the evidence obtained by the police as a result of an illegal search. We disagree because we find that the Washington County Sheriff's detectives possessed probable cause to search Fox's truck. Fox also argues that the trial court erred when it failed to suppress his confession in violation of the Fifth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution. We disagree because there is no evidence in the record that the police conduct causily related to the confession and there is no evidence that the detectives' conduct was coercive.
 {¶ 2} Accordingly, we affirm the judgment of the trial court.
 I. {¶ 3} On April 8, 2003, Fox was observed by Washington County Sheriff Detectives Mark Warden and Mark Johnson entering Robert Perry's house and exiting approximately ten to twelve minutes later.
 {¶ 4} Detectives Warden and Johnson had been given information by reliable informants that Fox was a heavy user of heroine and sold heroine to support his habit. The information provided by the informants also indicated that Robert Perry was selling heroine from his home.
 {¶ 5} Detectives Warden and Johnson followed Fox after he left Perry's home, observed him commit a traffic infraction and pulled him over. Detectives Johnson and Warden testified in the trial court suppression hearing that upon activation of the strobe lights, they observed Fox stuffing something under his seat with his right hand.
 {¶ 6} After Detective Warden got Fox out of his truck, Detective Johnson shined a flash light onto the driver side floor boards and noticed neatly folded bundles of paper wrapped with a rubber band which due to prior experience and training, he knew contained heroine. Detective Johnson told Detective Warden that he had found heroine in Fox's truck. Detective Warden took Fox to his car and had him execute a written Miranda waiver. Fox admitted on tape that he traveled to Robert Perry's house and that he had stayed there about 15 minutes. He also admitted that he tossed something down under the seat at the time he was pulled over, although he denied leaning forward to do so. Fox admitted to being a heavy user of cocaine and that he had purchased ten packets of heroine on credit from Robert Perry prior to being stopped, part of which he intended to sell to repay Robert Perry from the proceeds of the sale and part of which he intended to use himself. Upon further questioning by Detective Warden, Fox said that he had purchased heroine from Robert Perry for resale approximately twenty to thirty times.
 {¶ 7} Appellant was arrested immediately after the taped interview.
 {¶ 8} On September 17, 2003, Fox plead guilty to trafficking in drugs, (heroine), a fourth degree felony in violation of Ohio Revised Code § 2925.03(A)(2) and (C)(6)(c) as charged in count two of his indictment.
 {¶ 9} Fox sought to suppress all evidence obtained from his vehicle and his recorded statement in Detective Warden's car. The trial court recognized the automobile exception to the warrant requirement and found there was probable cause to stop Fox's vehicle; the folded packets containing heroine were found to be in plain view when they were seized by the sheriff's detectives. Fox also sought to suppress all statements made to the detectives prior to and after getting into Detective Warden's car on the grounds that Fox's statements prior to getting into Defendants car were made prior to Fox's waiver of his Miranda rights and his subsequent statements were coerced by denial of medical treatment for withdrawal symptoms during the approximately 40 minutes he was questioned in Detective Warden's car and due to false promises of leniency. The trial court suppressed Fox's statement prior to his tape recorded waiver of his Miranda rights but held all subsequent statements were admissible.
 II. {¶ 10} The denial of a motion to suppress involves mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the creditability of the witness. State v. Mills
(1992), 62 Ohio St. 3d 357, 366, 582 N.E. 2d 972. Consequently, in its review, an appellate court must accept the trial courts findings of fact if they are supported by competent, credible evidence. State v. Geysinger (1993), 86 Ohio App. 3d 592, 594,621 N.E. 2d 726. However, an appellate court determines the matter of law, without deferring to the trial courts conclusions, on whether these facts meet the applicable legal standard. Statev. Klein (1991), 73 Ohio App. 3d 486, 488, 597 N.E. 2d 1141. Fox contests whether Detective Johnson could determine that the folded and bundled papers on the driver's side floorboard contained heroine. The trial court found that Detective Johnson could identify the folded paper packages as containers for heroine. We find that due to Detectives Johnson's experience and training, his testimony regarding what he could see was competent and credible, and we thus accept the trial court's finding.See, State v. Geysinger, supra.
 {¶ 11} Fox also contests the trial court's application of law to the facts. We first address the seizure of the folded paper packets from Fox's truck. The fourth amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution have been interpreted as requiring the police to obtain a warrant to search areas where one has a reasonable expectation of privacy, subject to a few well delineated exceptions. Katz v. United States (1967), 389 U.S. 347, 357,19 L. Ed. 2d 576, 88 S. Ct. 507. One generally has a reasonable expectation of privacy in an automobile, although this expectation of privacy is lesser than one would have in a residence. California v. Carney (1985), 471 U.S. 386, 391,85 L. Ed. 2d 406, 105 S. Ct. 2066. Search warrants may be obtained upon a demonstration of probable cause to support the search to a neutral, detached magistrate. Crim. R. 41. Probable cause for a search is present when the totality of the circumstances makes it fairly probable that particularly described evidence of the crime will be found. Illinois v. Gates (1983), 462 U.S. 213, 238,76 L. Ed. 2d 527, 103 S. Ct. 2317. Here Detective Johnson did not have a search warrant when he seized the folded paper packets containing heroin from Fox's truck. We must therefore examine several exceptions to the warrant requirement.
 {¶ 12} One exception to the warrant requirement is a search incident to arrest. Chimel v. California (1969), 395 U.S. 752,763, 23 L. Ed. 2d 685, 89 S.Ct. 2034. The arrestee and the area within the arrestee's immediate control may be searched without a warrant on the rationale that weapons posing a threat to an officer's safety or destructible evidence might be located in this area. Id. In Brown v. Ohio (1992), 63 Ohio St. 3d 349,352, 353, 588 N.E. 2d 113, the officer stopped the driver for a traffic violation, arrested the driver for driving under the influence of alcohol, and placed the driver in the officer's vehicle when the officer then undertook a search of the driver's vehicle. The Ohio Supreme Court found that the warrantless search of the driver's vehicle did not satisfy the search incident to arrest exception to the warrant requirement. Id. The Ohio Supreme Court reasoned that a warrantless search of the car was not justified on the rationale of officer safety or preservation of destructible evidence when the driver was secured in the officer's vehicle. Id. The driver had no opportunity to obtain a weapon or anything else from his car when he was secured in the officer's vehicle. Id.
 {¶ 13} Here, Fox was not arrested and not secured either in or near the detective's car when Detective Johnson searched Fox's vehicle. Therefore, the warrantless search of Fox's truck can be justified by the search incident to arrest exception to the warrant requirement. See, Brown v. Ohio, supra.
 {¶ 14} In Texas v. Brown, 460 U.S. 740, the Supreme Court stated that a warrantless search of a car could be justified by the automobile exception to the warrant requirement which permits the warrantless search of an automobile if the search is supported by probable cause. California v. Acevedo (1991),500 U.S. 565, 579, 114 L. Ed. 2d 619, 111 S. Ct. 1982;; UnitedStates v. Ross (1982), 456 U.S. 798, 824, 72 L. Ed. 2d 572,102 S. Ct. 2157; State v. Mills, 62 Ohio St. 3d at 367. Where police officers have probable cause to search an entire vehicle they may conduct a warrantless search of every part of the vehicle and its contents that may logically conceal the object of the search. Ohio v. Welch (1985), 18 Ohio St. 3d 88,480 N.E. 2d 384, syllabus, citing United States v. Ross, supra. See,
also, California v. Acevedo, supra. Here Detectives Warden and Johnson knew that Fox had stopped at a known dealer of heroine and observed Fox making furtive gestures after they turned on their strobe lights signaling him to pull over. Detective Johnson then used a flash light to illuminate the interior of Fox's truck, which itself is not a Fourth Amendment violation. Texas v. Brown (1983), 460 U.S. 739 — 740,75 L. Ed. 2d 502, 103 S. Ct. 1535. Detective Johnson saw the neatly folded papers bundled by a rubber band which he knew to be heroine on the floorboard of Fox's vehicle. These facts are quite similar to those in New York v. Belton (1981), 453 U.S. 454, 455 — 456,69 L. Ed. 2d 768, 101 S. Ct. 2860 where the officer smelled marijuana emanating from the car and saw an envelope marked "Supergold" which he believed to contain marijuana. The United States Supreme Court found that the warrantless seizure of a jacket in the car was justified as a search incident to arrest.Id. at 460. In Brown v. Ohio, supra, the Ohio Supreme Court noted that the officer in Belton also possessed probable cause to search the vehicle. Therefore, we hold that Detectives Warden and Johnson had probable cause to search Fox's vehicle. Evidence obtained from the folded papers bundled by the rubber band was therefore admissible.
 III. {¶ 15} Appellant argues in his second assignment of error that his recorded statements made while in Detective Warden's car were not voluntary because they were coerced by the refusal to provide medical treatment for heroine withdrawal symptoms and promises of leniency.
 {¶ 16} Appellant's anxiety or anticipation of detoxification symptoms from heroine withdrawal were not the product of police misconduct, thus they do not make his confession involuntary.
 {¶ 17} The trial court cited the following passage fromLaFave's treatise on search and seizure:
"Absent the crucial element of police overreaching,' the court reasoned `there is simply no basis for concluding that any state action has deprived a criminal defendant of due process.'Connelly is grounded in the notion that `that state action' beyond merely receiving defendants confessions' into evidence is necessary, that at a minimum there must be `police conduct causally related to the confession,' and that this conduct must be `coercive.' Connelly thus makes it clear that the personal characteristics of the defendant cannot alone `ever dispose of the inquiry into constitutional "voluntariness." As the court elaborated, `while mental condition is surely relevant to individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry.'" LaFave, search and seizure, (3rd Ed. 1996), Sec. 8.2(e), 671. State v. Robert Perry (Sept. 15, 1997), Washington App. No. 96 CA10, unreported, 10.
 {¶ 18} In the case sub judice, we find no error with the trial court's decision denying the motion to suppress. Appellant's argument is based on allegations regarding the facts. He argues, for example, that because he was going to begin having withdrawal symptoms at the time he made the incriminating statements in Detective Warden's car, that his statements were not voluntary. While this Court agrees, that a trial court must consider drug influence when assessing voluntariness, there is no indication that the court below did not consider Appellant's evidence of coercion due to withholding medical treatment for withdrawal symptoms. These were factual issues presented to the trial court and the court resolved conflicting testimony by finding that Appellant's recorded statement to Detective Warden, under the totality of the circumstances, was voluntary. Moreover, we note that the record in the case sub judice is devoid of any evidence of police overreaching or coercion.
 {¶ 19} Appellant also argues that he was improperly coerced into confessing with promises of leniency, as was ruled improper in State v. Arrington (1984), 14 Ohio App. 3d 111. Upon reviewing the transcript of the suppression hearing, we find that Detective Warden denied this categorically and offered a credible explanation. Detective Warden stated that he didn't need to offer incentives to Appellant for cooperation because he was confident as to the quality of the case. Second, none of the promises were present or acknowledged on the tape. Third, the acknowledgements which Appellant did make on the tape contradict his assertion:
"Q: Okay. The waiver of the rights is, — I have read this statement of my rights. I understand and know what my rights are. I am willing to make a statement, know — statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats' — in other words, I am not sitting here trying to break your arm . . ."
 {¶ 20} The Trial Court found, from this tape, and from the other evidence presented, that it was "apparent that this gentlemen understood his rights and he gave a voluntary statement,". Even if Detective Warden had offered to make recommendations or favorable comments regarding Appellant's cooperation, they would not be prohibited under Arrington,supra. The facts in Arrington were very specific. The defendant in that case was promised specifically that he would not face additional charges in exchange for a statement, not given advice that his cooperation would be helpful to him. The Second District recently affirmed the distinction between improper promises such as those in Arrington, and appropriate comments by police as to the benefit to be gained by truthful cooperation. State v. Marks (Aug. 8, 2003), Montgomery App. No. CA 19629, unreported:
"Clearly, the officers hope that defendant would cooperate with them and complete the sale of this cocaine to Bill Perry, defendants intended buyer. The officers asked defendant if he would be willing to do that, and they told him that he could likely help himself by cooperating with them in that manner. However, defendant was not coerced in that regard, and no specific promises were made to him regarding any particular penalties or forms of leniency he might receive if he could cooperate in that way. Id., * * * page 47."
 {¶ 21} Thus, even if Appellant's allegations were true, since he did not allege specific promises regarding particular penalties or forms of leniency, his allegations would not support a finding that his confession was involuntary.
 {¶ 22} Appellant's claims about the need for medical treatment and his directly controverted statements as to offers of cooperation in exchange for statements are not sufficient, under the totality of the circumstances, to overturn the trial court's factual determination of voluntariness. Therefore, Fox's second assignment of error is overruled and the trial court's decision to admit his taped statements is sustained.
 {¶ 23} We overrule Fox's assignments of error and affirm the judgment of the trial court.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and Abele, J.: Concur in Judgment and Opinion.