[Cite as *State v. Shelby*, 2016-Ohio-5721.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA20 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| CHARLES L. SHELBY, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 08/31/16** |

_____
APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for Appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Robert
C. Anderson, Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.
_____

McFarland, J.

{¶ 1} Charles Shelby appeals his felony convictions entered by the

Lawrence County Court of Common Pleas, after he was found guilty by a

jury of aggravated trafficking in drugs and tampering with evidence. On

appeal, Appellant contends that 1) the evidence presented at trial is

insufficient to support his conviction and also that his conviction is against

the manifest weight of the evidence; 2) the State of Ohio failed to bring him

to trial within the time required by R.C. 2945.71 and therefore he is entitled

to a dismissal of all counts of the indictment; 3) the trial court erred to his

prejudice when it allowed Appellant's statement to be used against him, due to the fact that the statement was not voluntarily given; and 4) the trial court erred to his prejudice and abused its discretion when the trial court allowed the State of Ohio to introduce rebuttal evidence without properly disclosing the rebuttal evidence in accordance with Crim.R. 16, thereby depriving Appellant of his constitutional right to a fair trial.

{¶ 2} Having found no merit to the assignments of error raised by Appellant and specifically finding that he was brought to trial within speedy trial limits and that his convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, his assignments of error are overruled. Accordingly, the judgment of the trial court is affirmed.

## FACTS

{¶ 3} Appellant was arrested on March 20, 2015 and was subsequently indicted for one count of aggravated trafficking in drugs, a first degree felony in violation of R.C. 2925.03(A)(2)(C)(1)(d), and one count of tampering with evidence, a third degree felony in violation of R.C. 2921.12(A)(1). The indictment stemmed from an incident that occurred on March 20, 2015 at the Holiday Inn Express located in Ironton, Ohio. Appellant and his girlfriend, Ronita Butler, were staying at the hotel, which was located within 1000 feet of a school. The couple got into an argument

which escalated and resulted in her leaving the room and reporting to hotel staff that she had been assaulted and that Appellant had narcotics in the room.

{¶ 4} Law enforcement responded to the incident and went to Appellant's hotel room accompanied by hotel staff. Officers Wilson and Lawson knocked on Appellant's door. Appellant answered the door, denied that he had drugs in the room and granted the officers permission to search the room. During the search, Captain Bowman arrived on the scene. When officers located marijuana in Appellant's coat pocket, Bowman gave Appellant a verbal Miranda warning. The search continued and officers found several small jeweler's bags, four cell phones, approximately $2,650.00 in cash, and a marijuana blunt in Appellant's luggage. Also, during the search, the hotel manager informed Captain Bowman that a maintenance man had discovered a bag with what appeared to be drugs in the trash can outside the hotel and that Ashley Miller, a hotel employee, reported she saw Appellant go down the stairs and exit the hotel briefly and then return right after Appellant's argument with his girlfriend and just before law enforcement arrived.

{¶ 5} Captain Bowman retrieved the drugs from the trash can, which consisted of 159 pills. Upon being confronted, Appellant initially denied

that the pills were his, but then later admitted the pills belonged to him after Captain Bowman told him that he had watched him on video putting the pills in the trash can. At that point, Appellant was transported by law enforcement to a private location, or "staging area," where he provided a recorded statement in connection with an interview conducted by Detective Aaron Bollinger. Prior to starting the interview, Detective Bollinger again provided a Miranda warning to Appellant and obtained a written waiver of Appellant's Miranda rights.

{¶ 6} In his recorded statement, Appellant stated that he was from Keego Harbor, Michigan, which is about a forty minute drive from Detroit. He admitted that he had received approximately 400 oxycodone pills from his girlfriend's mother, Bonita Butler, the previous Monday, that he had distributed about 200 of them and had about 200 of them left. He stated that the pills were in quantities of 15 mg. and 30 mg. He stated that he had most recently delivered a portion of the pills to the Thibodaux's, who lived "in the projects." He explained that he would typically drop pills off to Bonita's customers and then later pick up money to take to Bonita. He also explained that if he made sales to other individuals he was paid more money. He stated that in exchange for doing this, Bonita took care of him and his girlfriend and provided them with two oxycodone pills per day. He further

stated that the drugs came from three different suppliers in Detroit and Atlanta.

{¶ 7} Appellant was arrested and was held in jail on these charges from the date of his arrest on March 20, 2015 until he was brought to trial on August 6, 2015. During this time, Appellant filed several pleadings, including a request for discovery, a request for a bill of particulars, a motion to suppress, and also a motion to dismiss based upon speedy trial grounds. Appellant's motion to suppress alleged that he was intoxicated or under the influence of a controlled substance at the time he provided statements to law enforcement and that as a result, the statements were involuntary and inadmissible at trial. Detective Aaron Bollinger, the officer who obtained Appellant's recorded statement as well Appellant's written waiver of his Miranda rights, testified at the suppression hearing. The trial court ultimately denied Appellant's motion to suppress as well as his pretrial motion to dismiss and the matter proceeded to trial.

{¶ 8} At trial, the State introduced several witnesses, including: Ironton Police Officer and Lawrence County Drug Task Force member, Steven Wilson; Ironton Police Captain and Lawrence County Drug Task Force member, Chris Bowman; Holiday Inn Express employee, Ashley Miller; Lawrence County Engineer, Paul Rubado; Ironton Catholic Schools,

St. Lawrence and St. Joseph assistant principal, Chris Monty; and Ohio Bureau of Criminal Identification and Investigation ("BCI") forensic scientist, Megan Snyder. Appellant testified in his own defense but presented no other witnesses. In response to Appellant's testimony, the State called Perry Adkins, employed with the Lawrence County Drug and Major Crimes Task Force, as a rebuttal witness.

{¶ 9} Officer Wilson and Captain Bowman testified regarding their involvement in the search of Appellant's hotel room and obtaining Appellant's recorded statement. Ashley Miller testified that she saw Appellant exit the hotel and then return right after the argument with his girlfriend, and just before law enforcement arrived. Paul Rubado and Chris Monty collectively testified that the Holiday Inn Express and specifically the room of the hotel in which Appellant was staying was located within 1000 feet of St. Lawrence/St. Joseph Catholic School, which is an accredited community school established under Chapter 3314 of the Ohio Revised Code. Megan Snyder testified regarding the testing she performed on the 159 pills submitted to BCI, stating that all of the pills were confirmed to be either 15 or 30 mg. pills of oxycodone. Additionally, Appellant's recorded statement was played for the jury as part of the State's case.

{¶ 10}  Appellant testified in his own defense.  He testified that he was intoxicated and had used crack cocaine at 3:00 a.m. the night before providing a statement.  He further essentially testified that the pills were not his, but that he cooperated with Captain Bowman to come up with a story that would convince Detective Bollinger that he could provide intelligence that would allow him to be used as confidential informant.  He testified that the information contained in his recorded statement did not reflect the truth, that he did not place anything in the trash at the hotel, that he had never sold drugs and did not intend to sell drugs, and that he did not understand the Miranda waiver that he signed.  On cross examination, Appellant denied having placed calls from the jail to Bonita Butler and Ashley Thibodaux.  As a result, the State then presented Perry Adkins as a rebuttal witness.  As part of Adkins' testimony, recorded jail calls between Appellant, Butler and Thibodaux were played for the jury.  The calls with Thibodaux, while somewhat vague, included references to getting "that money" and asking what to do with it.  Appellant also states in both calls that he will be going away for a long time.

{¶ 11}  After hearing the evidence and the testimony presented at trial, the jury found Appellant guilty of both counts as contained in the indictment.  Appellant was convicted and sentenced by the trial court to a

ten-year prison term on count one and a two-year prison term on count two,

to be served concurrently.  It is from the trial court's final order that

Appellant now brings his timely appeal, setting forth four assignments of

error for our review.

ASSIGNMENTS OF ERROR

"I.     THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO
        SUPPORT DEFENDANT'S CONVIDITON [SIC], WHICH
        CONVICTION IS MANIFESTLY AGAINST THE WEIGHT OF
        THE EVIDENCE AND MUST BE REVERSED.

II.     THE STATE OF OHIO FAILED TO BERING [SIC] THE
        DEFENDANT-APPELLANT TO TRIAL WITHIN THE TIME
        REQUIRED BY RC 2945.71 [SIC] AND THEREFORE THE
        DEFENDANT IS ENTITLED TO A DISMISSAL OF ALL COUTNS
        [SIC] OF THE INDICTMENT

III.    THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
        DEFENDANT WHEN THE TRIAL COURT ALLOWED THE
        STATEMENT MADE BY THE DEFENDANT-APPELLANT TO
        BE USED AGAINST THE DEFENDANT-APPELLANT DUE TO
        THE FACT THAT SAID STATEMENT WAS NOT
        VOLUNTARILY GIVEN BY THE DEFENDANT-APPELLANT.

IV.     THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
        DEFENDANT AND ABUSED THE TRIAL COURT'S
        DISCRETION WHEN THE TRIAL COURT ALLOWED THE
        STATE OF OHIO TO INTRODUCE REBUTTAL EVEIDENCE
        [SIC] IN ACCORDANCE WITH CRIMINAL RULE 16 THEREBY
        DEPRIVING THE DEFENDANT TO HIS CONSTITUTIONAL
        RIGHT TO A FAIR TRIAL."

ASSIGNMENT OF ERROR III

{¶ 12}  For ease of analysis, we address Appellant's assignments of error out of order.  In his third assignment of error, Appellant contends that the trial court erred to his prejudice when it allowed Appellant's statement to be used against him, arguing that the statement was not voluntarily given. This particular argument was the subject of a pre-trial motion to suppress, which was denied by the trial court.  Thus, Appellant essentially challenges the trial court's denial of his motion to suppress his statement.

{¶ 13}  "Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8; citing *State v. McNamara*, 124

Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). *See also State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.  Preliminarily, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Crim.R. 12(F).

{¶ 14}  Prior to initiating a custodial interrogation, law enforcement must "inform an accused 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " *State v. Ulery*, 4th Dist. Athens No. 07CA28, 2008-Ohio-2452, ¶ 7; quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602 (1966).  Neither party in this case argues that Appellant was not subject to a custodial interrogation or that Miranda warnings were not provided to him.  Thus, no further analysis is required on this issue.

{¶ 15}  To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any interrogation, was given the Miranda warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his Miranda constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v.*

*Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds); citing *Miranda*. However, contrary to the second prong in *Edwards*, the Supreme Court recently held that the prosecution "does not need to show that a waiver of Miranda rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis v. Thompkins*, 560 U.S. 2250, 130 S.Ct. 2250, 2261 (2010) (Citation omitted). "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id*. at 2262. That is because "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id*.

{¶ 16} In the case presently before us, Appellant challenges the voluntariness of his statement, which was essentially a confession. Voluntariness of a confession and compliance with *Miranda* are analytically two separate inquires. *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, (2000). "[E]ven when Miranda warnings are not required, a confession may be involuntary if on the totality of the circumstances the

" 'defendant's will was overborne' by the circumstances surrounding the giving of a confession." *State v. Petitjean*, 140 Ohio App.3d 517, 526, 748 N.E.2d 133 (2nd Dist.2000); quoting *Dickerson, supra,* at 434.

{¶ 17}  Here, the record reflects that Appellant was provided Miranda warnings not once, but twice.  He was verbally advised in his hotel room by Captain Chris Bowman during the initial search and was again advised orally and in writing by Sergeant Aaron Bollinger while he was being questioned in the police cruiser.  Again, Appellant does not argue on appeal that he was not properly Mirandized.  Instead, Appellant's motion to suppress was based upon his contention that he was intoxicated or under the influence of a controlled substance at the time he made his statements, thus rendering his statements involuntary.

{¶ 18}  A review of the record reflects that the State presented testimony by Sergeant Bollinger at the suppression hearing.  Sergeant Bollinger testified regarding the "Miranda form" that he completed and advised Appellant of before giving his statement and the signed form was admitted into evidence.  When asked if Appellant appeared to be intoxicated at the time he gave his statement, Sergeant Bollinger testified "No sir. Absolutely not."  He testified that he did not ask him if he was intoxicated

because there was no smell on or about his person and he did not appear to be intoxicated or under the influence of anything.

{¶ 19} The record before us further reflects that the trial court listened to Appellant's recorded statement prior to issuing its decision on the suppression motion. In its decision, the trial court stated that it listened to the recorded statement "for the purpose of listening to the Defendant's voice, diction, and any other evidence of being under the influence of a controlled substance at the time the statement was being recorded." Ultimately, the trial court detected no evidence that would have interfered with Appellant's voluntary, knowing and intelligent waiver of his Miranda Rights and agreement to give a statement, and denied Appellant's motion.

{¶ 20} Based upon the record before us, and based upon the totality of the circumstances, we cannot conclude that the trial court erred in denying Appellant's motion to suppress. As this Court has previously noted, "a trial court must consider drug influence when assessing voluntariness." *State v. Fox*, 4th Dist. Washington No. 03CA63, 2004-Ohio-6972, ¶ 18. However, Appellant's argument is based upon factual issues presented to the trial court and the trial court clearly resolved this factual question in favor of the State. *Id*. We find no error in that determination.

{¶ 21} We further note Appellant argues, for the first time on appeal, that his statements were not voluntary because he decided to speak to law enforcement as a result of promises of leniency, or a promise to be used as a confidential informant. First, we note that Appellant's motion to suppress claimed only that his statement was involuntary due to his intoxication or being under the influence. The argument that he had been promised leniency was not included in his motion. Second, when the State introduced Appellant's statement at trial, Appellant objected on the same grounds set forth in his motion to suppress. The trial court noted it had already ruled on those specific grounds, denied Appellant's motion, and then granted Appellant a continuing objection. Thus, Appellant did not move to suppress his statement on these grounds and did not object to the use of his statement on these grounds at trial.

{¶ 22} Having failed to raise the issue in the trial court, Appellant has forfeited the right to raise it on appeal. *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 43; citing *State v. Marcinko*, 4th Dist. Washington No. 06CA51, 2007-Ohio-1166, ¶ 23; *see also State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994) ("By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and

decided by the court and, by omission, those issues which are otherwise being waived."); *State v. VanHoose*, 4th Dist. Pike No. 07CA765, 2008-Ohio-1122, ¶ 18; *State v. Jacobson*, 4th Dist. Adams No. 01CA730, 2003-Ohio-1201; *State v. Wilson*, 9th Dist. Medina No. 02CA0013-M, 2003-Ohio-540, ¶ 16. Further, "[t]his well-settled waiver rule applies to arguments not asserted either in a written motion to suppress or at the suppression hearing." *Columbus v. Ridley*, 2015-Ohio-4968, -- N.E.2d --, ¶ 28; citing *State v. Johnson*, 10th Dist. Franklin No. 13AP-637, 2014-Ohio-671, ¶ 14; *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 9; *State v. Perkins*, 9th Dist. Summit No. 21322, 2003-Ohio-3156, ¶ 13; *State v. Molk*, 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926. Thus, because Appellant did not properly preserve this issue for argument on appeal, we decline to address it.

{¶ 23} Accordingly, because we find no error with regard to the trial court's denial of Appellant's motion to suppress his statement, Appellant's third assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶ 24} In his second assignment of error, Appellant contends that the trial court erred in denying his motion to dismiss based upon speedy trial grounds. Appellant argues that the State failed to bring him to trial within

the time required by R.C. 2945.71, Ohio's speedy trial statute. The State, however, counters by arguing that tolling events attributable to Appellant tolled the time in which he had to be brought to trial and that he was, in fact, brought to trial within the time provided for in R.C. 2945.71.

{¶ 25} Appellate review of a trial court's decision on a motion to dismiss for a speedy-trial violation involves a mixed question of law and fact. *State v. Sinkovitz*, 2014-Ohio-4492, 20 N.E.3d 1206, ¶ 6 (4th Dist.). We defer to the trial court's factual findings if some competent, credible evidence supports them, but we review de novo the court's application of the law to those facts. *Id*. R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after arrest. If an accused is in jail in lieu of bail solely on the pending charge, each day counts as three days for purposes of the speedy-trial calculation. R.C. 2945.71(E).

{¶ 26} R.C. 2945.72(H) provides that the speedy trial time may be tolled by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." Further, " '[a]s long as the trial court's disposition occurs within a reasonable time, a defendant's motion to suppress tolls the speedy trial clock from the time the defendant files the motion until

the trial court disposes of the motion.' " *State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 107 (3rd Dist.); quoting *State v. Curtis*, 3rd Dist. Marion No. 9-02-11, 2002-Ohio-5409, ¶ 12; *State v. Waldron*, 4th Dist. Ross No. 93 CA 1978, 1994 WL 510046, *2.

**{¶ 27}** Here, it appears that Appellant remained incarcerated on the underlying charges from the time of his arrest on March 20, 2015, until he was brought to trial on August 6, 2015. Thus, the triple count provision contained in R.C. 2945.71(E) applies and the State had 90 calendar days to bring Appellant to trial. Based upon the dates in the record before us, and not counting the day of his arrest, it appears 139 calendar days elapsed between Appellant's arrest and trial. Accordingly, Appellant has presented a prima facie speedy trial violation. However, as argued by the State, several tolling events occurred.

**{¶ 28}** Specifically, Appellant filed a request for discovery and request for bill of particulars on April 7, 2015. While the State responded to the request for discovery the very next day, on April 8, 2015, it did not respond to Appellant's request for a bill of particulars until July 30, 2015. Under R.C. 2945.72(E) and (H) respectively, the time within which an accused must be brought to trial is extended by "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or

instituted by the accused" and "the period of any reasonable continuance granted other than upon the accused's own motion."  The Supreme Court of Ohio has also stated that "[a] demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." *State v. Radabaugh*, 4th Dist. Jackson No. 06CA2, 2007-Ohio-153, ¶ 11; quoting *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, paragraph one of the syllabus.

{¶ 29}  Based upon the foregoing, time was tolled against Appellant from the date he filed his request for a bill of particulars until the State filed the bill on July 30, 2015, resulting in 114 days of the 139 days being tolled.[1] Finally, we are mindful that a defendant's motion to dismiss also tolls the running of the speedy trial statute. *State v. Radabaugh* at ¶ 13; citing *State v. DePue*, 96 Ohio App.3d 513, 645 N.E.2d 745 (1994) (stating "the Supreme Court held that the speedy trial time period is tolled upon a defendant's motion to dismiss on double jeopardy grounds); citing *State v. Broughton*, 62 Ohio St.3d 253, 581 N.E.2d 541 (1991); *see also* R.C. 2945.72(E). Because Appellant filed a motion to dismiss based upon speedy trial grounds on August 4, 2015, additional time was tolled before trial began on August 6, 2015.

---

[1] The State primarily focuses on the time tolled by the filing of Appellant's motion to suppress, as well as the continuance of the trial date as a result of the filing of the motion to suppress.  However, we find that the time tolled by the filing of the motion to suppress is subsumed within the time tolled between the filing of the request for the bill of particulars and the State's response thereto.

{¶ 30} Based upon these facts, Appellant was brought to trial within the time required by R.C. 2945.71(C)(2). As such, we cannot conclude that the trial court erred in denying Appellant's motion to dismiss based upon speedy trial grounds. Accordingly, Appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

{¶ 31} In his fourth assignment of error, Appellant contends that the trial court erred to his prejudice and abused its discretion when it allowed the State to introduce rebuttal evidence without properly disclosing the evidence in accordance with Crim.R. 16, thereby depriving him of his constitutional right to a fair trial.

{¶ 32} Crim.R. 16 governs discovery and provides in section (A) that "all parties have a continuing duty to supplement their disclosures." Under Crim.R. 16(L)(1), "[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." A trial court has broad discretion in determining a sanction for a discovery

violation, and a trial court's decision will not be reversed absent an abuse of that discretion. *See State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 33} Here, the State represents that it did not become aware of the jail calls until the night before the first day of trial. As such and because they did not intend to use the calls in their case-in-chief, the State provided the calls to the defense at the conclusion of the first day of trial, and before Appellant testified the next day. Thus, the record indicates that these calls were newly discovered and Appellant presented no evidence to the contrary. Based upon this record, there is no indication that the State willfully withheld these telephone recordings.

{¶ 34} Further, when previously reviewing a similar scenario, this Court reasoned that because the appellant was the one who made the calls, he knew that the evidence existed and could be used against him. *State v. Payton*, 4th Dist. Scioto No. 14CA3628, 2015-Ohio-1796, ¶ 11; citing *State v. Lewis*, 1st Dist. Hamilton Nos. C-840596, C-840607, 1985 WL 8865, *3 ("defendant should have moved for disclosure of the 'statement;' he knew of

its existence. [ ] His failure to do so was fatal to his claim of error").

Additionally, in *Payton* this Court also reasoned that "statements contained

in jail phone calls are not statements within the meaning of Crim.R. 16(B)

and therefore need not be disclosed as part of discovery." *Payton* at ¶ 11;

citing *State v. Lanier*, 180 Ohio App.3d 376, 2008-Ohio-6906, 905 N.E.2d

687, ¶ 8-9 (vacated in part on other grounds); citing *State v. Lewis, supra,* at

*2.]

{¶ 35}  This Court's prior reasoning in *State v. Payton* applies herein

and leads us to conclude that the trial court did not err or abuse its discretion

in allowing the recorded jail calls to be used as evidence against Appellant.

Appellant knew he had placed these calls when he denied having placed

them on cross-examination during trial.  Even if the State had not produced

them at all, Appellant was on notice that they existed.  Accordingly,

Appellant's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR I

{¶ 36}  In his first assignment of error, Appellant contends that the

evidence presented at trial was insufficient to support his convictions, and

that his convictions were against the manifest weight of the evidence.

"When a court reviews a record for sufficiency, '[t]he relevant inquiry is

whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12,  2014-Ohio-1019, 9 N.E.3d 930, ¶ 146; quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).  "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27; citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

{¶ 37}  In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.  "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387, 678 N.E.2d 541.  But the

weight and credibility of evidence are to be determined by the trier of fact.

*State v. Kirkland, supra,* at ¶ 132. The trier of fact is free to believe all, part,

or none of the testimony of any witness, and we defer to the trier of fact on

evidentiary weight and credibility issues because it is in the best position to

gauge the witnesses' demeanor, gestures, and voice inflections, and to use

these observations to weigh their credibility. *Dillard* at ¶ 28; citing *State v.*

*West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶ 38} Appellant was indicted and found guilty by a jury of

aggravated trafficking in drugs and tampering with evidence. R.C. 2925.03

governs trafficking offenses and provides, in pertinent part, as follows:

"(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for

distribution, or distribute a controlled substance or a controlled

substance analog, when the offender knows or has reasonable

cause to believe that the controlled substance or a controlled

substance analog is intended for sale or resale by the offender

or another person.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

* * *

(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the first degree, and the court shall impose as a mandatory

prison term one of the prison terms prescribed for a felony of

the first degree."[2]

{¶ 39}  Thus, for the trafficking charge, the State had to prove that

Appellant knowingly prepared for shipment, shipped, transported, delivered,

prepared for distribution, or distributed a controlled substance or a controlled

substance analog, in this case oxycodone, in an amount equaling or

exceeding five times the bulk amount but less than fifty times the bulk

amount, knowing or having reasonable cause to believe that the oxycodone

was intended for sale or resale by himself or another person.  The State also

alleged and therefore had to prove that Appellant's acts in drug trafficking

were committed in the vicinity of a school.

{¶ 40}  Appellant was also convicted of tampering with evidence.

R.C. 2921.12(A)(1) governs tampering with evidence and provides, in

pertinent part, as follows:

"(A) No person, knowing that an official proceeding or

investigation is in progress, or is about to be or likely to be

instituted, shall do any of the following:

---

[2] Although Appellant's indictment charged a violation of R.C. 2925.03(A)(2)(C)(1)(d) and that is what the jury convicted Appellant of, the trial court's judgment entry erroneously states Appellant was convicted of a violation of R.C. 2925.03(A)(1)(C)(1)(d).

(1) Alter, destroy, conceal, or remove any record, document, or

thing, with purpose to impair its value or availability as

evidence in such proceeding or investigation[.]"

As the Supreme Court of Ohio recently held, "[t]here are three elements of

this offense: (1) knowledge of an official proceeding or investigation in

progress or likely to be instituted, (2) the alteration, destruction,

concealment, or removal of the potential evidence, (3) the purpose of

impairing the potential evidence's availability or value in such proceeding or

investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11

N.E.2d 1175, ¶ 11.

{¶ 41}  With regard to both of the crimes for which Appellant was

charged, we note that "[a] person acts knowingly, regardless of purpose,

when the person is aware that the person's conduct will probably cause a

certain result or will probably be of a certain nature."  Further, "[a] person

has knowledge of circumstances when the person is aware that such

circumstances probably exist." R.C. 2901.22(B).   Both aggravated

trafficking in drugs and tampering with evidence contain the element of

knowledge.  "[P]ossession" is defined as "having control over a thing or

substance, but may not be inferred solely from mere access to the thing or

substance through ownership or occupation of the premises upon which the

thing or substance is found." R.C. 2925.01(K). "Possession may be actual or constructive." *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶ 42} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.); quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982); *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Hankerson* at 91, 434 N.E.2d 1362; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Brown* at ¶ 19.

{¶ 43} "Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. * * * Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Kingsland* at ¶ 13; *State v. Criswell*, 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, ¶ 11.

{¶ 44} The record presently before us indicates that law enforcement was called to the hotel in Lawrence County, Ohio, in which Appellant was a guest, after his girlfriend left the room they occupied and reported to hotel staff that she had been assaulted and that Appellant had drugs in the room. When Officers Wilson and Lawson initially arrived they went to Appellant's room whereupon Appellant granted them permission to search the room. Appellant initially denied having any narcotics in the room. While the search was being conducted by those officers, Sergeant Bowman arrived on the scene. At this point the officers performing the search located a small baggie of marijuana and Appellant received a verbal Miranda warning from Sergeant Bowman. Officers proceeded to locate several small jewelers' bags, which they later testified are used to re-package narcotics for sale, four

cell phones, and approximately $2,650.00 in cash for which Appellant had no legitimate explanation.

{¶ 45} Further, during the search of the hotel room, Sergeant Bowman testified that the hotel manager motioned him into the hallway and told him that a worker had reported that she saw Appellant exit the hotel down a back staircase just prior to police arriving and that the maintenance man had found narcotics in the outside trash can where Appellant had exited. Sergeant Bowman left the room and retrieved a baggie of pills from the trash can. When Bowman confronted Appellant about finding the pills in the trash Appellant initially denied they were his. Bowman then told Appellant that he watched Appellant on video as he put the pills in the trash, at which point Appellant admitted the pills were his. Appellant told Bowman that he thought the police would be coming after his girlfriend yelled out in the hallway and he wanted to get rid of the pills, so he "stashed" them in the trash can. The pills were later tested by BCI and determined to consist of 159 oxycodone pills in amounts of 30 mg. and 15 mg., totaling approximately 3,825 mg., which is more than five times the bulk amount and have a street value of approximately $7,000.00.

{¶ 46} Sergeant Bowman testified that in an attempt to gain intelligence from Appellant, Officer Wilson transported Appellant to another

location where they could interview him privately and take a recorded statement. Sergeant Bollinger and Detective Newman were present during the interview, which took place in the parking lot behind a Buffalo Wild Wings restaurant. Sergeant Bollinger again Mirandized Appellant and obtained a signed waiver of Appellant's Miranda rights. During his recorded interview, Appellant told the officers that he and girlfriend Ronita Butler got into an argument which escalated in the hotel room, at which point she went into the hallway and told a hotel worker that Appellant had "dope" in the room and then she left. Appellant stated that he then went outside and "stashed" the drugs in a trash can. He told the officers that the pills came from three different sources in Detroit and Atlanta and that he had gotten 400 pills from his girlfriend's mother, Bonita Butler, the previous Monday. He told the officers he believed he had about 200 pills left at that time. He further told the officers that he dropped pills off to various individuals and later picked the money up for Bonita. He stated that he had most recently dropped pills off to individuals named Thibodauxs in Ironton, Ohio.

{¶ 47} We have already determined above that Appellant's statement or confession given to law enforcement on the day of his arrest was voluntary and admissible as evidence against him. We further determined that subsequent calls made from the jail by Appellant to both Bonita Butler

and Ashley Thibodaux were admissible as evidence against Appellant. Based upon this evidence as well as the evidence found in the hotel room during the search we cannot conclude that Appellant's convictions are against the manifest weight of the evidence.

{¶ 48} Appellant argues, with respect to the drug trafficking charge, "[t]he evidence below simply does not support any conviction for trafficking or possession of drugs[,]" and therefore, "the State of Ohio must prove constructive possession in order for the Defendant-Appellant to traffic in drugs." We disagree. Initially, we note that Appellant was not charged or convicted of possession of drugs. However, understanding that possession is implicit in trafficking, we acknowledge Appellant's argument. Appellant seems to base this argument on the premise that his confession was involuntary and inadmissible. Because we have already determined that Appellant's recorded statement, which was essentially a confession, was voluntary and admissible, we reject Appellant's argument. By Appellant's own account he received 400 pills to distribute for sale, he had distributed approximately 200 of them and still had in his possession approximately 200 of them. He also admitted that the pills found in the trash were his. Thus, there is evidence that Appellant had actual possession of the drugs at issue.

**{¶ 49}** Appellant further argues, with respect to the tampering with evidence charge, that "[t]here is no way the Defendant-Appellant could have known a law enforcement investigation could have been in progress at the time of the alleged tampering with evidence." Again, Appellant seems to base this argument on the premise that his confession was involuntary and inadmissible. Because we have already determined that Appellant's recorded statement was voluntary and admissible, we reject Appellant's argument. By his own account Appellant thought that an investigation was likely to occur and therefore he "stashed" the drugs in the trash. We believe this conduct certainly constitutes tampering with evidence.

**{¶ 50}** After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that we must reverse Appellant's convictions. Moreover, " '[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily also includes a finding that sufficient evidence supports the conviction.' " *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369 N.E.3d 369, ¶ 29 (4th Dist.); citing *State v. Adkins*, 4th Dist. Lawrence No. 13CA17, 2014-Ohio-3389,

¶ 27.  Having already determined that Appellant's aggravated trafficking in drugs and tampering with evidence convictions are not against the manifest weight of the evidence, we necessarily reject Appellant's additional claim that his convictions are not supported by sufficient evidence.  Thus, Appellant's first assignment of error is overruled.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring in part and dissenting in part:

{¶ 51} I concur in judgment only in the majority's opinion on Shelby's second and fourth assignments of error, concur in judgment and opinion on the Shelby's first and third assignments of error, and dissent from the failure to require the trial court to correct the clerical error in its sentencing entry.

{¶ 52} Shelby's second assignment of error asserts that the state failed to bring him to trial within the time required by R.C. 2945.71. As the majority concludes, 139 days elapsed from Shelby's arrest until his trial so he has presented a prima facie speedy-trial violation, i.e., more than the 90 days specified in R.C 2945.71(C)(2) and (E). But the majority opinion neglects to mention the result of Shelby's proof of a prima facie speedy-trial violation: the burden then shifted to the state to show that the speedy-trial limit had not expired because R.C. 2945.72 extended it. *See State v. Hucks*, 4th Dist. Ross No. 15CA3488, 2016-Ohio-323, ¶ 20, citing *State v. Davis*, 4th Dist. Scioto No. 12CA3506, 2013-Ohio-5311, ¶ 19.

{¶ 53} The majority concludes that the state's 114-day delay in responding to Shelby's request for a bill of particulars tolled the speedy-trial clock. This ignores the requirement that any delay in responding to the defendant's request be a reasonable time, which is often interpreted to mean

30 days. *See Hucks* at ¶ 24, and cases cited there noting that it has been widely held that 30 days is a reasonable time to respond to a defendant's demand for discovery; *see also State v. Johnson*, 12th Dist. Butler No. CA2011-09-169, 2013-Ohio-856, ¶ 34 (motions for discovery and bill of particulars toll the speedy-trial time for a reasonable time—in that case the state complied with both requests 13 days later). There is simply nothing in the record indicating that the state's 114-day time to respond to the request for a bill of particulars was reasonable, especially considering it took the state only one day to respond to Shelby's demand for discovery. This case involved only two charges. Consequently, the majority errs in concluding that this entire 114-day period was tolled.

{¶ 54} Nevertheless, I agree with the state's alternate contention that Shelby's motion to suppress tolled the speedy-trial because it necessitated the continuance of the original trial date so that when combined with a reasonable 30-day period to respond to the request for a bill of particulars, Shelby was tried within the 90-day speedy-trial period. Therefore, I concur in overruling Shelby's second assignment of error, albeit for different reasons than that expressed in the majority opinion.

{¶ 55} In his fourth assignment of error Shelby contends that the trial court erred when it allowed the state to introduce rebuttal evidence in

violation of Crim.R. 16 and his constitutional right to a fair trial.  As the majority notes, Shelby himself made the statements in question—jail calls—so he knew they existed and he received the transcripts of the statements before he testified.  Consequently, Shelby cannot show that earlier disclosure of these statements would have benefitted the preparation of his defense or that he suffered unfair prejudice.

{¶ 56} I would go no further in the analysis of Shelby's fourth assignment of error, i.e., I would not address the additional question of whether the statements are discoverable under Crim.R. 16(B)(1).  The majority's conclusion that we held in *Payton*, 2015-Ohio-1796, at ¶ 11 that "statements contained in jail phone calls are not statements within the meaning of Crim.R. 16(B) and therefore need not be disclosed as part of discovery" is questionable. That quote was preceded in Payton by this language: "at least one court has held that", which merely indicates recognition rather than adoption of that nonbinding precedent. Thus that discussion is best viewed as obiter dictum. Not addressing this issue here advances the core legal principle of judicial restraint.  *See State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 34, quoting *PDK Laboratories, Inc. v. United States Drug Enforcement Administration* (D.C.Cir.2004), 362 F.3d 786, 799 (Roberts, J.,

concurring in part and in the judgment) (" 'This is a sufficient ground for deciding this case, and the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further' "); *see also State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 31 (4th Dist.).

{¶ 57} Finally, as the majority opinion notes in footnote 2, the trial court erred by stating that Shelby was convicted of trafficking in drugs in violation of R.C. 2925.02(A)(1)(C)(1)(d) because he was actually convicted of trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(d). Under App.R. 9(E), "[i]f anything material to either party * * * is misstated, * * * the court of appeals, on proper suggestion or of its own initiative, may direct that * * * misstatement be corrected * * *." As we have in comparable circumstances, I would exercise that discretion here to remand the cause to the trial court to correct the clerical error in its sentencing entry. *See State v. Frye*, 4th Dist. Scioto No. 14CA3604, 2014-Ohio-5016, ¶ 20.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Part and Dissents in Part with Opinion.

For the Court,

BY:    _____
       Matthew W. McFarland, Judge


**NOTICE TO COUNSEL:      Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**